ELMER G. STARK, Plaintiff-Appellee, *v.* D & F PAVING COMPANY *et al.*, Defendants-Appellants.

Second District    No. 76-49

Opinion filed December 22, 1977.

Gates W. Clancy and James S. Mills, both of Geneva, for appellants.

Peregrine, Stime & Newman, of Wheaton, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

This appeal involves the effect of a jury verdict which awarded compensatory damages for personal injuries and "O" punitive damages in the absence of a special finding that the verdict was based upon either willful and wanton misconduct or on negligence.

The plaintiff Elmer G. Stark was employed as a truck driver. On August 14, 1972, he drove his employer's truck onto the Wheaton Asphalt plant grounds in order to receive a load of asphalt. Following standard procedure he brought his truck to a halt near the main entrance of the plant grounds to place an order by means of an intercom microphone for a specific quantity of asphalt. He then drove his vehicle along the company roadway until he found himself alongside an "oiling platform." The platform, which is about 15 feet long and about 36 inches high, is one from which drivers can spray the interior of their trucks with oil so as to prevent the asphalt from adhering to the inner surfaces. Plaintiff parked his vehicle adjacent to the oil dock, left the cab and proceeded to spray the inside of his truck. A truck of the defendant D & F Paving Company driven by the defendant Robert M. Young came to a stop behind plaintiff's truck. Young stepped out of the cab. Meanwhile the plaintiff had climbed down from the platform and onto the roadway in order to spray the paver or spreader that was attached to the rear of his truck and at one time bent over to spray the underside of the paver. While so occupied plaintiff was struck from behind by the truck of the defendants.

There was a conflict in the testimony as to the distance between the two vehicles. Plaintiff testified that when he left the oil dock to oil the paver he noticed defendants' truck with the motor on about 20 feet behind him. Young testified that he stopped his truck about 15 feet behind plaintiff's vehicle. Young explained that when he jumped on the back of his truck in order to roll down a tarpaulin his truck began to roll forward and that he immediately leaped from the truck and ran to the cab where he stopped the truck by using the foot brake. Young said that when he stepped out of the cab he left the motor running with the "gear" in neutral and engaged the emergency brake on the floor of the cab but did not activate the hand brake on the steering column. He then heard the cries of plaintiff who had been pinned between the two trucks and immediately proceeded to back his truck away from plaintiff's vehicle. The testimony of both plaintiff and Young indicated that Young allowed his truck to go forward a trifle in the brief interval between the time he raised his foot from the foot brake and the time he placed it on the gas pedal. There was testimony that there is a procedure by which a vehicle such as defendants' can be made to go in reverse without first going forward at all.

Young testified that at the place where he brought his truck to a stop just prior to the accident the roadway appeared to be "flat." However, a land surveyor engaged by the plaintiff testified that there was a downward slope in the roadway going north as one approached the oiling platform until one was about 10 feet away from the platform at which point the roadway sloped upwards. In the last 10 feet of the downward slope, which is about where defendants' truck would have been when it began to roll, there was a decline of approximately five-eighths of an inch. Photographs of the area also went to the jury.

Evidence was adduced as to the nature and condition of the braking system on the defendants' truck at the time of the accident. There was a hand brake on the steering column and a foot brake, both of which operated on a compressed air system. There was also a mechanically operated emergency brake on the floor of the cab, which would not be affected by any defect in the air brake system. The evidence showed that there was a defect in the air brake system consisting of a leak in a "pancake"; and that in a truck similar to the defendants, there would be 8 to 10 of these "pancakes." These were described as seals where the air is applied on one side with the other side being mechanical. Defendants' witness testified that a leaking "pancake" in a truck would have very little effect and that the vehicle would stop even if one were out. There was no testimony to indicate whether the compressed air that was being utilized in the other "pancakes" would eventually leak out through the single bad "pancake" so as to render the entire air brake system ineffective for the purpose of parking. Young said he knew about the defect in the air brake system some three or four days before the day of the accident. Young also testified that he very rarely used the emergency brake on the floor and did not know if the brake was or was not in good operating condition at the time he engaged it just prior to the accident. He was confronted at trial with his testimony at a deposition that he "never used" the emergency brake on the floor, prior to the accident.

The allegations of negligence which went to the jury included charges that defendant negligently failed to keep a reasonably careful lookout; failed to sound a horn or give timely warning; left a motor vehicle unattended on an incline without effectively setting the brake; parked a motor vehicle with defective brakes upon an incline without placing the same in gear and turning off the ignition; and otherwise negligently operated a motor vehicle without an effective braking system. In addition in the count for willful and wanton misconduct which went to the jury defendants were charged with continuing to use the truck when they knew or should have known of its defective brakes and of leaving the truck unattended on an incline without placing it in gear and turning off the ignition when they knew or should have known that such action

would have prevented the vehicle from moving, notwithstanding its being equipped with defective brakes.

The trial court instructed the jury that the defendants were guilty of negligence as a matter of law and that the plaintiff, as a matter of law, was free from contributory willful and wanton misconduct, thus leaving only the issues of plaintiff's freedom from contributory negligence and defendants' willful and wanton misconduct for the jury's consideration. The court refused to direct a verdict for the defendants on the willful and wanton charge. The jury's verdict in favor of the plaintiff for $125,000 compensatory damages followed and the court entered judgment on the verdict.

Defendants contend that the plaintiff was contributorily negligent as a matter of law; that the court erred in refusing to direct a verdict for the defendants on the willful and wanton charge; and that the court erred in directing a verdict for the plaintiff on the issue of his freedom from contributory willful and wanton misconduct. Defendants further contend that the verdict, considered as founded on either the negligence or the willful and wanton charge, is against the manifest weight of the evidence.

■■ We first conclude that plaintiff was not guilty of contributory negligence as a matter of law. Defendants argue that the fact that Stark knew that the heavy truck was parked 20 feet behind him with its motor running and yet didn't "pay any attention to it," although he was familiar with the area and the obvious dangers involved, establishes contributory negligence as a matter of law. We do not agree. Ordinarily it is not contributory negligence for one to act on the assumption that another will not be guilty of negligence. (*Markus v. Lake County Ready-Mix Co.*, 6 Ill. App. 2d 420, 426-27 (1955); *Pearson v. Ford Motor Co.*, 32 Ill. App. 3d 188, 192 (1975).) Here, plaintiff had sprayed his paver with oil at the Wheaton company's oil dock on numerous occasions without incident. He had no reason to suspect that defendants' truck had either defective brakes or that a fully functional brake had not been properly engaged. He was in no way put on notice that there was anything amiss with defendants' truck or that the brake had not been effectively activated. Hence, the issue of his contributory negligence was at least a jury question. See also *Ragan v. Fourco Glass Co.*, 47 Ill. App. 3d 1, 5 (1977), and *Offutt v. Pennoyer Merchants Transfer Co.*, 36 Ill. App. 3d 194, 201-02 (1976).

■■ We further conclude that the trial court properly instructed the jury that the defendants were negligent as a matter of law since all of the evidence on this issue so overwhelmingly favors the plaintiff, even when viewed in the aspect that most favors the defendants, that no contrary verdict predicated on that evidence could ever stand. *Pedrick v. Peoria &*

*Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967); *Murphy v. Vodden*, 109 Ill. App. 2d 141, 146-47 (1969).

In fact, the defendants have not seriously argued that the evidence was insufficient to support a verdict of guilty on the basis of their negligence. They strenuously argue, however, that the issue of their willful and wanton misconduct should not have been given to the jury and that in any event the jury was improperly instructed on that question. They thus argue that any verdict based upon willful and wanton misconduct results in a verdict unsupported by the evidence.

Over defendants' objection the court gave an issues instruction which included plaintiff's claim that the conduct of the defendants was willful and wanton in:

> "A. Continuing to use a truck for hauling asphalt which truck they knew, or should have known, had defective brakes;
>
> B. Leaving a truck unattended on an incline, without placing the vehicle in gear and turning off the ignition, when they knew, or should have known, that such action would have prevented the vehicle from moving, notwithstanding its being equipped with defective brakes."

■■ The Illinois authorities have consistently held that a willful or wanton injury must either have been intentional

> " '* * * or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care.' (*Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569, 583; *Hering v. Hilton*, 12 Ill. 2d 559, 562; *Klatt v. Commonwealth Edison Co.*, 33 Ill. 2d 481, 488.)" (*Hocking v. Rehnquist*, 44 Ill. 2d 196, 201 (1970).)

In *Turner v. Commonwealth Edison Co.*, 35 Ill. App. 3d 331, 337-38 (1976), the court noted that the definition of a wanton act was "based on a concept that under the known or plainly observable circumstances the doing or failing to do something will naturally and probably result in injury to another, and the defendant must have been aware of that situation and ignored it." See *Rowe v. Frazer*, 83 Ill. App. 2d 367, 377 (1967); see also *Stogsdill v. Manor Convalescent Home, Inc.*, 35 Ill. App. 3d 634, 659-61 (1976); see also Prosser, Torts §34, at 185 (4th ed. 1971); see also Restatement (Second) of Torts §500 (1965).

Thus, it was error for the court to instruct the jury in effect that it could find willful and wanton misconduct if it determined that the defendants continued to use a truck which they "should have known" had defective brakes or that they left a truck unattended on an incline, without placing

the vehicle in gear and turning off the ignition, when they "should have known" that such action would have prevented the vehicle from moving, notwithstanding its being equipped with defective brakes. Under this instruction, the jury would be permitted to find the defendants guilty of willful and wanton misconduct without requiring it to find that the defendants acted in disregard of a risk of probable harm that was either known to them or so obvious that they must be charged with knowledge of the same. Although IPI Civil No. 14.01 defining willful and wanton conduct ( * * * "an utter indifference to or conscious disregard for the safety of others") was given, this would not obviate the need for a proper statement of the issues under the willful and wanton count. We therefore conclude that it was error to give the issues instruction as to count II in the form stated, over the objections of the defendants.

Defendants, however, do not base their argument upon a claim of error in the instructions except by implication. The thrust of defendants' argument is that the instructions refer only to two alleged willful and wanton acts, (1) using a truck with defective brakes and (2) leaving the truck with its motor running unattended on an incline out of gear. They argue that there was no evidence that the mechanically operated parking brake was known to be defective or that there were any circumstances to suggest it to the defendants before the incident. They also argue that there was no evidence of an incline at the time and place of the incident. They thus argue that the jury was allowed to speculate and base its verdict on issues not supported by the evidence.

■■ From our review of the record we conclude that there is insufficient evidence of the defendants' willful and wanton misconduct to go before the jury even under proper instructions. According to the testimony of both the defendant-driver and the plaintiff, the roadway in the area of the oiling pad appeared level. Even the surveyor's report made some three years after the mishap indicated a negative slope of only .05 of a foot (about five-eighths of an inch) in 10 feet, in the general area where the truck rolled forward. In the absence of an obvious decline, it is difficult to denominate Young's actions in either not engaging the mechanical emergency brake at all, or in inadequately engaging it, or in engaging a defective brake as willful and wanton misconduct. (The testimony of the truck mechanic, Mr. Cardosi, was that the leak in the pancake on defendants' truck would not have prevented the effective use of the air brakes in bringing the truck to a halt.) If, therefore, we were to presume that the verdict was based on the willful and wanton charge, we would agree with the defendants' claim that they are entitled to a new trial.

■■ We cannot, however, presume under the circumstances of this case that the jury actually based its verdict on the willful and wanton

charge in light of its explicit refusal to assess punitive damages. In addition, a general verdict for a plaintiff on two or more theories of recovery may not ordinarily be set aside if there is sufficient evidence to support at least one of the plaintiff's theories. (*Moore v. Jewel Tea Co.*, 46 Ill. 2d 288, 294 (1970); *Kelty v. Wiseman Construction Co.*, 38 Ill. App. 3d 808, 815 (1976).) Here, the negligence count is amply supported by the evidence.

■■ The Illinois courts, it is true, recognize a special rule that where a general verdict is returned by a jury that considered both negligence and willful and wanton charges, the verdict is "presumed" to be based on the charge of which malice is the gist. (See, *e.g., Nacvich v. Downing*, 50 Ill. App. 3d 935, 938 (1977).) The rationale for this rule was explained in the leading case of *Greene v. Noonan*, 372 Ill. 286, 292-93 (1939). In *Greene*, the supreme court held that damages awarded for willful and wanton misconduct arise out of a different consideration from those of negligence and that thus the erroneous submission of an unproven willful and wanton charge, where both negligence and willful and wanton counts were submitted to a jury, will require reversal of a judgment for plaintiff since "no one knows what influence the unproven charge may have had upon the jury." In the *Greene* case, the jury awarded the maximum amount allowed by law and the supreme court regarded this as a sign that the jury had been improperly influenced by the very consideration of the unproven count predicated on malice. The rationale of *Greene v. Noonan* would seem to call for a contrary conclusion in the instant case. The jury, in the case at bar, explicitly refused to assess punitive damages. Further, the evidence supports medical expenses of $2,700, lost earnings to the date of trial of more than $20,000 and future lost earnings, reduced to present cash value, in excess of $45,000. The jury actually awarded compensatory damages of $125,000. In light of the evidence of past, present and future pain and suffering and loss of enjoyment, the actual award is very reasonable and indicates that the jury was able to rationally analyze all the evidence, free from the prejudice that the *Greene* court feared, where an unproven count predicated on malice is submitted to a jury.

■■ It should be noted that the defendants could have requested a special finding by the jury as to each count of the multicount complaint (see Ill. Rev. Stat. 1975, ch. 110, sec. 68(3)) but did not do so; they are thus not now in a position to argue that this court must presume that the verdict herein was founded on the unproven count. (See *Moore v. Jewel Tea Co.*, 46 Ill. 2d 288, 294 (1970).) Further, section 68(4) of the Civil Practice Act provides that the erroneous submission of an unproven count will be grounds for reversal only where it "appears" that a defendant was prejudiced by the submission of the unsupported count. (Ill. Rev. Stat. 1975, ch. 110, par. 68(4); see also *Miller v. DeWitt*, 37 Ill. 2d 273, 286-87

(1967); see also *Allen v. Dorris*, 16 Ill. App. 3d 980, 984-85 (1974).) The Joint Committee Comments to section 68 indicate that the legislature, in enacting this provision, intended to modify the rule of *Greene v. Noonan* in this respect. (In this context, see also *Darby v. Checker Company, Inc.*, 6 Ill. App. 3d 188, 196 (1972).) In the instant case, it does not appear that the jury was inflamed or confused, in its consideration of the negligence count, by the fact that it was also required to consider the unproven willful and wanton charge. Hence, we hold that the defendants were not prejudiced by the erroneous submission of the willful and wanton charge.

■■ Defendants also contend that the verdict, even if regarded as founded on the negligence charge, is against the manifest weight of the evidence, thus requiring a new trial. (See, *e.g., Mizowek v. De Franco*, 64 Ill. 2d 303, 310-11 (1976).) A verdict is against the manifest weight of the evidence where a contrary verdict is clearly indicated by the evidence. (*Browne v. Chicago Transit Authority*, 19 Ill. App. 3d 914, 917 (1974).) In the instant case, the verdict for plaintiff, considered as founded on the negligence count, is not against the manifest weight of the evidence. We therefore affirm the judgment.

Affirmed.

RECHENMACHER P. J., and GUILD, J., concur.