Lillian H. Shea, John H. Shea, a minor, by Lillian H. Shea, his mother and next friend, and Michael Shea, a minor, by Lillian H. Shea, his mother and next friend, Plaintiffs-Appellants, v. Sherman LaCost and Marjorie Langlois, d/b/a Silvertap; Raymond R. Roy and Isabel D. Roy, Defendants-Appellees.

**Gen. No. 11,081.**

Second District, Second Division.

February 27, 1958.

Released for publication March 28, 1958.

Piacenti & Cifelli and Victor N. Cardosi, of Kankakee, for plaintiffs-appellants.

Moran, Klockau, McCarthy & Johnson, of Rock Island, and Shapiro & Lauridsen, of Kankakee (Frank G. Schubert, of counsel) for defendants-appellees.

JUSTICE WRIGHT delivered the opinion of the court.

This is an appeal from a judgment entered by the Circuit Court of Kankakee county in favor of the defendants, following a verdict of not guilty returned by the jury upon the trial of the cause. The action was instituted under the Illinois Dramshop Act by the plaintiffs for loss of their means of support because of the death of their husband and father, John H. Shea. The plaintiffs contend that the verdict is contrary to the manifest weight of the evidence, that the trial court committed reversible error in the giving of defendants' instructions numbered 2, 3, and 10, and that the trial court should have granted a new trial.

John H. Shea, the husband of Lillian H. Shea, plaintiff, and the father of John H. Shea and Michael Shea, minor-plaintiffs, was killed in an automobile collision when he was driving alone in a northerly direction, about 1:00 o'clock A.M., on November 16,

1954, on U. S. Route 54, one mile north of Manteno, Kankakee county, Illinois. The automobile driven by the deceased collided with a semi-trailer truck which was being driven in a southerly direction. At this point Route 54 is a four lane highway running generally north and south.

The evidence sustains plaintiffs' theory that the collision occurred in the truck's lane of traffic. Therefore, our discussion of the evidence will be limited to the evidence concerning the sale of liquor and the question of the intoxication of John H. Shea.

The defendants, Sherman LaCost and Marjorie Langlois, were the licensees and operators of a certain tavern doing business as the Silvertap located in Kankakee, Illinois, and the defendants, Raymond R. Roy and Isabel D. Roy, were the owners of the real estate and leased the premises for tavern purposes to LaCost and Langlois.

Robert Zdenek, a witness for the plaintiffs, testified that he and John H. Shea, the deceased, arrived at the Silvertap about 9:30 o'clock P.M., on November 15, 1954, and stayed until about 12:30 o'clock A.M., on November 16, 1954. Robert Zdenek was the principal witness as to the extent of the drinking and intoxication of the deceased. On direct examination this witness testified that John H. Shea drank about eight standard twelve ounce bottles of beer while in the Silvertap, which were purchased there. On cross examination he stated that he knew that Shea had around four bottles of beer but it may have been between six and ten. He further stated that ten might be high and that he really didn't know exactly. This witness further recalled giving a statement prior to the trial that he didn't actually know how many beers Shea did drink, stating it was long ago. The defendant, Sherman LaCost, testified he was working in his tavern during the period in question and that he did not serve

456

any intoxicating liquor to John H. Shea before his death and also testified that he did not know him. A bartender, who was working during the period in question, stated that he did not know John H. Shea or Robert Zdenek.

The witness, Robert Zdenek, on the question of the intoxication of Shea, testified on direct examination that he did not believe that Shea was drunk and that Shea was not completely drunk, but did state that in his opinion Shea was under the influence of alcoholic liquor because, he, the witness, was. On cross examination the witness stated that on leaving the tavern Shea's conversation was not any different than it ordinarily was and that the witness assumed that Shea was in a fit condition to drive his car home and that he would not have permitted Shea to go ahead if he thought that he would kill himself. The witness further stated that as Shea left the tavern he did not notice anything unusual about Shea's conduct. The widow-plaintiff testified she and her husband had been married for eight and one-half years and that she had never seen Shea intoxicated. A police officer stated that he smelled liquor around Shea's automobile after the collision, and from the body of the deceased which he viewed at the funeral home.

■■ The record and evidence before us concerning the sale, the number of sales, and whether or not Shea was in fact intoxicated, was conflicting and presented a question of fact for determination by the jury.

Defendants' instruction No. 2 stated:

"The Court instructs you that it is not sufficient, in order to hold the defendants liable in this case, that the deceased, John Shea, merely felt the liquor which he had been drinking, or that he was slightly under the influence of liquor, and that he was feeling good merely, but that it is absolutely essential, before there can be any recovery, for you to believe from all the

evidence that the deceased was intoxicated. If you believe from all the evidence that the deceased was not intoxicated and that when he left defendants' place of business on the evening in question he was perfectly able to take care of himself and did not thereafter become intoxicated from liquors obtained from the defendants, then you must find the defendants not guilty."

■ The intoxication of Shea was one of the necessary elements to be established by the plaintiff in order to recover in this case. What constitutes intoxication is a question of fact for determination by the jury, and an instruction which attempts to tell the jury the degree of intoxication necessary to justify recovery under the Dramshop Act invades the province of the jury.

In Tipton v. Schuler, 87 Ill. App. 517, an action was instituted under the Dramshop Act for loss of means of support. A verdict was returned by the jury finding defendant not guilty and judgment was entered thereon. Plaintiff appealed assigning as error the giving of the following instruction:

"The court instructs the jury that it is not every degree of intoxication in a case of this kind that entitles the plaintiff to recover, but the intoxication must be to such an extent that her husband was so under the influence of intoxicating liquor that his judgment, memory and reasoning was impaired to such an extent that he did not know the natural and reasonable consequences of his own act, and the jury must believe from the evidence that the injury was the result of the intoxication before they can find a verdict for the plaintiff."

At page 518 the court said:

"This instruction is clearly bad. To entitle the plaintiff to recover, it was not necessary that the proof show that the intoxication of her husband at the time

458

of receiving the injury was such that his judgment, memory and reasoning was so impaired that he did not know the natural and reasonable consequences of his own acts. The degree of intoxication necessary for recovery is essentially a question of fact; and an instruction which attempts to settle or comprehend the state of intoxication necessary in order to fix the liability of the defendant is clearly foreign to the province of the judge presiding. It is well known that the effect of alcohol upon the mental and physical energies of a number of persons is not proportionate, but may be widely different. It deadens the judgment, memory and reasoning of some whose powers of locomotion are apparently unimpaired, while it inspires the mental faculties of others, yet leaves them helpless physically. In either case, or any case, the degree or nature of intoxication is immaterial if it is clear that the intoxication directly caused the injury complained of. In the case under review, the plaintiff's husband may have been in possession of judgment, memory and reasoning, cognizant of the consequences of his acts, knowing the danger of placing himself upon the track, and yet have been in that state of drunken recklessness or benumbed physical condition as to allow an impulse to place himself upon the track to overcome his natural prudence."

■ ■ The instruction held bad in Tipton v. Schuler, supra, told the jury the degree of intoxication necessary for recovery. Whereas, Defendants' instruction No. 2 complained of in the instant case told the jury what did not constitute intoxication. What does or does not constitute intoxication within the meaning of the Dramshop Act is a question of fact for determination by the jury. Matkins v. Fenorsky, 348 Ill. App. 125, 108 N.E.2d 373.

In Shorb v. Webber, 188 Ill. 126, at page 132 our Supreme Court said:

■■■■

"Something is said in the argument as to what will constitute intoxication, within the meaning of this section of the statute. We know of no terms which could safely be incorporated in an instruction defining intoxication."

■ It might well be that in the minds of the jury the question of the intoxication of Shea was one of the questions, if not the controlling question, that influenced the jury in reaching its verdict. This case is close on the facts and the law therefore requires that the instructions given accurately state the law and be free from any error that might mislead the jury.

Defendants' instruction No. 2 is bad because it attempts to settle the degree of intoxication necessary in order to fix liability and this essentially is a question of fact for determination by the jury.

Since we hold that this instruction is erroneous and does not accurately state the law and the giving of it constituted reversible error, it is unnecessary to consider other errors assigned.

For the reasons herein stated, the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

CROW, P. J. and SOLFISBURG, J., concur.