EMANUEL STEIN, Plaintiff-Appellee, *v.* BURNS INTERNATIONAL SECURITY SERVICES, INC., Defendant-Appellant.

First District (4th Division)    No. 80-2866

Opinion filed December 23, 1981.

Francis J. Marasa, Joan M. Engeman, and Marvin Riman, all of Sweeney and Riman, Ltd., of Chicago, for appellant.

Robert L. Lesak, of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Emanuel Stein, brought this action in the circuit court of Cook County seeking damages from defendant, Burns International Security Services, Inc. In count I of the complaint, plaintiff sought compensatory damages for injuries incurred as a result of the negligent or intentional conduct of defendant's employee, Lish Garner. In count II plaintiff sought punitive damages charging that defendant had wilfully and wantonly failed to perform an adequate background investigation of its employee Garner before defendant hired Garner as a security guard. Following a jury trial, the jury returned a verdict for plaintiff on count I of the complaint and found defendant liable for $175,000 in compensatory damages. The jury returned a verdict in favor of defendant on count II of the complaint.

On appeal, defendant contends: (1) there was no evidence to support the wilful and wanton count of the complaint (count II) and the trial court's submitting that count to the jury for determination prejudiced its verdict on count I of the complaint; (2) defendant was denied a fair trial by the admission of evidence relating to plaintiff's charitable works; and

(3) defendant was denied a fair trial by improper comments of plaintiff's counsel during closing argument.

We affirm.

BACKGROUND

## Count I

In count I of the complaint, plaintiff charged that he had suffered injury as a result of the negligent or intentional conduct of defendant's employee, Garner. Garner was a security guard employed by defendant, a licensed detective agency. The theory of liability was based on the general grounds of defendant's vicarious liability for the acts of its servant and on section 10b(10) of the Detectives and Investigators Act (Ill. Rev. Stat. 1979, ch. 111, par. 2622(10)) which provides that defendant, as a licensed detective agency, is "legally responsible for the good conduct" of its security guards.

As to count I, the evidence presented at trial showed that on the evening of October 15, 1975, plaintiff and his wife drove to the Edgewater Hospital in Chicago to visit his daughter. Plaintiff parked his car on the lot of a vacant gas station near the hospital. Plaintiff and his wife were inside the hospital for an hour and then returned to the car. They discovered that another car had parked behind their car, blocking plaintiff's exit.

Plaintiff waited a few minutes and then tried to open the front door of the other car so that he could push the car out of the way. At that moment, plaintiff was struck in the back of the neck by Garner, defendant's employee, who was on duty as a security guard at the hospital. Garner then grabbed plaintiff's left arm and pinned it behind plaintiff, forcing plaintiff's left hand up towards the back of his neck. Garner accused plaintiff of attempting to steal the car. Garner then dragged plaintiff one-half block back to the hospital. While doing so, Garner repeatedly struck plaintiff on the back of the neck. Garner forced plaintiff into the hospital lobby where they were met by another security guard. An argument ensued and plaintiff and his wife departed and went back to their car. The car that was blocking their exit was gone and plaintiff drove home.

Later that night, plaintiff's wife took him to a hospital in Skokie. Over the next couple of years, plaintiff spent several weeks in the hospital. As a result of the incident, plaintiff suffered permanent nerve damage to his neck and arm and his arm is partially disabled today. As a result of the injuries, plaintiff was required to close his solely owned business which was a small discount store selling clothes, rugs, draperies and other related goods. The business frequently required plaintiff to lift heavy objects and he could no longer do so. Plaintiff has also suffered frequent bouts of

depression since the incident and no longer engages in sexual relations with his wife.

At the time of the incident, plaintiff was 66 years old. Garner was in his early twenties. The day of the incident was Garner's first day of employment with defendant. Garner disappeared immediately after the incident and has never been located. The jury returned a verdict for plaintiff on count I and awarded him $175,000 in compensatory damages.

## Count II

In count II of the complaint, plaintiff sought punitive damages alleging that defendant had wilfully and wantonly failed to perform a proper background investigation of Garner. Plaintiff alleged that if the background investigation had been properly performed, Garner would not have been hired and the incident would not have occurred.

The only thing of importance plaintiff showed defendant had failed to do was to check with Garner's previous employer, another detective agency, to ascertain whether that agency would have recommended Garner's employment. Plaintiff showed that Garner's prior employer would not have recommended employment because Garner had failed to show up for work one day and was terminated as a result. The day before Garner was terminated, Garner had arrived for work intoxicated and was sent home. Defendant admitted that if it had checked with Garner's previous employer defendant probably would not have hired Garner.

At the conclusion of plaintiff's case-in-chief, defendant moved for a directed verdict on count II. The motion was denied. At the jury instructions conference, defendant objected to the submission of instructions based on count II. These objections were overruled and instructions concerning count II were submitted to the jury. The jury returned a verdict for defendant on count II.

OPINION

### I

### Allowing Jury to Consider Wilful and Wanton Count

We agree with defendant that the evidence was legally insufficient to support a verdict on count II of the complaint, and thus defendant's motion for a directed verdict should have been granted and the count should not have been submitted for the jury's determination.

■■ The mere failure to check an applicant's background does not give rise to an action for punitive damages against defendant. For liability to exist, the conduct of defendant in failing to check the background must be wilful and the conduct must exhibit a reckless disregard for the plaintiff's safety. (*Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920, 387 N.E.2d 1241.) It is not enough to merely show that the

applicant would not have been hired. Plaintiff must show that if a proper background investigation had been pursued, the defendant would have discovered facts indicating the propensity of the applicant to do harm. (See *Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920, 387 N.E.2d 1241.) In the present case, plaintiff at best showed that defendant was negligent in performing a background investigation, and even if a proper investigation had been performed, defendant would not have discovered any facts indicating a propensity on Garner's part to do harm. Intoxication during one day of prior employment and termination because of Garner's failure to show up for work are not facts, standing alone, that indicate Garner had a propensity to do harm.

Though it was error to submit the wilful-and-wanton count to the jury, we believe the error caused no prejudice to defendant. Defendant cites *Greene v. Noonan* (1939), 372 Ill. 286, 23 N.E.2d 720, as support for the proposition that the submission of instructions to the jury on theories of both negligence and wiful misconduct demands reversal when there is no evidence to support the wilful misconduct charge because it must be presumed that the jury's verdict was adversely affected by the wilful misconduct charge.

To begin with, *Greene v. Noonan* does not stand for the proposition defendant argues. *Green* held only that when a jury returns a general verdict for plaintiff and it cannot be determined whether the verdict was based on the negligence charge or the wilful misconduct charge, then a presumption arises that the jury's verdict was based on the wilful misconduct charge. Thus, if there is no evidence supporting the wilful misconduct charge, defendant is entitled to a new trial. In the present case, the presumption of prejudice does not arise because the jury returned separate verdicts and found for defendant on the wilful misconduct charge, thus clearly indicating its verdict for plaintiff on count I was not affected by the wilful misconduct charge. See *Stark v. D & F Paving Co.* (1977), 55 Ill. App. 3d 921, 371 N.E.2d 315.

Next, the rule of *Greene v. Noonan* is itself of doubtful applicability today. In 1955, section 68(4) was added to the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68(4)) and provides that a verdict shall not be "set aside or reversed for the reason that the evidence in support of any ground is insufficient to sustain a recovery thereon, unless before the case was submitted to the jury a motion was made to withdraw that ground from the jury on account of insufficient evidence and it appears that the denial of the motion was prejudicial." The Committee Comments to this section state that one of the reasons for enacting section 68(4) was to modify the rule of *Green v. Noonan* so that no presumption of prejudice should arise when the jury returns a general verdict for plaintiff when it has been properly instructed as to negligence but improperly instructed

on wilful misconduct. (See Ill. Ann. Stat., ch. 110, par. 68, Committee Comments, at 8 (Smith-Hurd 1968).) Thus, under section 68(4), a jury's verdict should not be presumed to have resulted from the improper wilful misconduct charge, as was held in *Greene*, but a determination of prejudice should be made on a case by case basis. In the present case, defendant has been unable to show how it was prejudiced by the wilful misconduct charge especially since the jury returned a verdict in its favor on that charge.

Accordingly, we hold that defendant was not prejudiced by the court's submission of count II of the complaint to the jury for determination.

## II

*Improper Evidence*

One of plaintiff's witnesses was Bishop John Kennelly of the Chicago Archdiocese. The Bishop was plaintiff's friend and had visited plaintiff at his place of business on frequent occasions before the incident. Plaintiff called the Bishop to rebut evidence brought out on cross-examination that plaintiff had had an automobile accident in 1972 and had suffered injuries that may have accounted for his present incapacity. The Bishop testified that he had frequently seen plaintiff at his place of business before the present incident and had seen plaintiff lift heavy objects without difficulty and had never seen plaintiff exhibit the physical problems he now has before the present incident.

Before the Bishop was called, defendant moved to prevent the Bishop from testifying that one of the reasons he would visit plaintiff was because plaintiff always had clothes and other goods to be picked up as donations to charity. Defendant wanted to prevent any mention of plaintiff's charitable works. The trial court told plaintiff's counsel that it would not allow the admission of any statements pertaining to plaintiff's charitable works.

On three occasions during the Bishop's direct testimony, the Bishop mentioned that he usually saw plaintiff when plaintiff had donations for charity. The Bishop's comments were not solicited by plaintiff's counsel but were part of his answers to general questions concerning the specific dates that the Bishop saw plaintiff. No objection or motion to strike was made by defendant to the Bishop's comments. On two occasions during cross-examination by defendant, the Bishop also made comments concerning plaintiff's charitable works. On one of these occasions the response was invited by defendant's question. No motion to strike these comments was made by defendant.

■■ Defendant claims it was prejudiced by the Bishop's comments. Though defendant made no objection to the comments, it alleges that if it

had done so, greater prejudice would have occurred because an objection would have merely emphasized the improper comments. However, we believe that if defendant had made an immediate objection when the Bishop first commented on plaintiff's charitable works, it could have avoided any possible repeat of such comments and could have avoided any possible prejudice caused by the comments. Therefore, we believe its failure to make a timely objection waived any error in the Bishop's making the comments. See *Schoolfield v. Witkowski* (1964), 54 Ill. App. 2d 111, 203 N.E.2d 460.

Even assuming no waiver, we also believe that the comments did not deny defendant a fair trial. The evidence as to liability under count I was overwhelming. The evidence as to damages showed that plaintiff suffered permanent injury as a result of the incident, that he has spent several weeks in the hospital, and that he is under continuous care of a doctor and shall continue under a doctor's care in the future. Plaintiff has suffered the loss of his business and has psychological problems as a result of the incident. Plaintiff frequently suffers pain in the affected area. Clearly, there was sufficient evidence to support the verdict and the amount of damages awarded on count I of the complaint, and defendant has been unable to show the verdict would have been different if the comments had not been made.

### III

*Closing Argument*

■■ Defendant alleges it was denied a fair trial by certain comments of plaintiff's counsel during closing argument. Defendant first points to two occasions on which plaintiff's counsel referred to defendant as a large, international corporation. No objection was made to these comments and thus the issue is waived. See *Grabner v. American Airlines, Inc.* (1980), 81 Ill. App. 3d 894, 401 N.E.2d 1196.

Defendant next points to comments by counsel which accused defendant of not being interested in the case and accused defendant, by implication, of making no effort to find Garner. We believe that defendant was not prejudiced by these remarks. As we have already indicated, the evidence on liability and damages in this case was overwhelming, and there is no indication the comments denied defendant a fair trial.

Accordingly, for the reasons noted, we affirm.

Affirmed.

ROMITI, P. J., and JOHNSON, J., concur.