**Ricardo TREVINO, Plaintiff–Appellant,**

**v.**

**UNION PACIFIC RAILROAD COMPANY and Missouri Pacific Railroad Company, Defendants–Appellees.**

**No. 89–3402.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1990.

Decided Oct. 22, 1990.

Saul I. Ruman, David M. Hamacher, William H. Tobin, Alan Faulkner, Ruman, Clements & Tobin, Hammond, Ind., for plaintiff-appellant.

Robert L. Landess, Raymond H. Groble, III, Daniel P. Hogan, Ross & Hardies, Chicago, Ill., Jack Friedlander, Calumet City, Ill., for defendants-appellees.

Before CUDAHY, POSNER, and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

This is a diversity suit for personal injuries, brought by Ricardo Trevino against the Union Pacific Railroad and its subsidiary, the Missouri Pacific. The subsidiary was the injurer, and why the parent was also sued is a mystery but one unnecessary to dispel in order to decide this appeal. The parties agree that Illinois law governs the substantive issues.

The complaint alleges that on February 8, 1987, the defendants "owned, operated, maintained and controlled a certain train of cars which was left standing across Joe Orr Road [in Chicago Heights, Illinois] and which then and there blocked travel" on the road; that Trevino was a passenger in an automobile being driven west on Joe Orr Road; that the automobile "came into contact with the train of cars" blocking the road, and Trevino was injured in the collision; and that the cause of the accident was the defendants' violation of their common law and statutory duties to maintain a safe crossing, and, most important, of their common law duty to warn that the crossing was occupied. The defendants, having answered the complaint, moved for judgment on the pleadings. Fed.R.Civ.P. 12(c). Their ground was *Dunn v. Baltimore & Ohio R.R.*, 127 Ill.2d 350, 130 Ill.Dec. 409, 537 N.E.2d 738 (1989), which holds that "a train stopped at a crossing is generally held to be adequate notice and warning of its presence to any traveler who is in the exercise of ordinary care for his own safety, and the railroad is under no duty to give additional signs, signals or warnings.... The exception to the general rule is that more warnings may be required if 'special circumstances' are present. There is no fixed rule as to what constitutes special circumstances." 127 Ill.2d at 357, 130 Ill. Dec. at 412, 537 N.E.2d at 741.

Responding to the defendants' motion the plaintiff argued that the Federal Rules of Civil Procedure did not require him to plead the existence of special circumstances, but that if the court disagreed he would like permission to file an amended complaint setting forth the following additional facts, some drawn from depositions

given in the companion case brought by the driver of the car (the plaintiff's brother) in an Illinois state court: "The railroad car that the automobile in which the plaintiff was riding collided with was a flat bed car which was dark in color. The crossing was unlit, and there were no street lights on the road approaching the crossing. The track that Joe Orr Road crossed was rusted and unused, and the driver of plaintiff's car had traveled that crossing many times before, and had never encountered a train.... [T]he cars were only on the crossing because the defendants had negligently bumped the cars through a holding fence onto the crossing." The district court granted the motion for judgment on the pleadings and denied the plaintiff permission to amend his complaint, holding that the facts that the plaintiff wanted to allege would not bring the case within the "special circumstances" exception to the "standing-car" rule. That rule, by the way, including its exception for special circumstances, is not an esoteric Illinois doctrine. It is the position of most states. Annot., *Liability of Railroad for Injury Due to Road Vehicle Running Into Train or Car Standing on Highway Crossing*, 84 A.L.R.2d 813 (1962). For illustrative decisions, see *Clark v. Columbus & Greenville Ry.*, 473 So.2d 947 (Miss.1985); *Davis v. Burlington Northern, Inc.*, 663 F.2d 1028 (10th Cir.1981); *Owens v. International Paper Co.*, 528 F.2d 606 (5th Cir.1976); *Pennsylvania R.R. v. Goldenbaum*, 269 A.2d 229, 233–34 (Del.1970); *Union Pacific R.R. v. Cogburn*, 136 Colo. 184, 315 P.2d 209 (1957). A few states have rejected the rule. *Terranova v. Southern Pacific Transportation Co.*, 158 Ariz. 125, 761 P.2d 1029 (Ariz.1988); *McLaughlin v. Chicago, Milwaukee, St. Paul & Pacific Ry.*, 31 Wis.2d 378, 143 N.W.2d 32 (1966).

By failing to submit the amended complaint with his motion, the plaintiff left the district judge substantially in the dark concerning the plaintiff's ability actually to cure the deficiencies that the judge had found in the original complaint. Whether this deficiency alone justified the district judge in denying the motion is an interesting question, on which see *Clayton v.*

*White Hall School District*, 778 F.2d 457, 460 (8th Cir.1985); *Bownes v. City of Gary*, 112 F.R.D. 424 (N.D.Ind.1986); cf. *Mortell v. Mortell Co.*, 887 F.2d 1322, 1327 (7th Cir.1989), but not one we need decide. The original complaint was sufficient, as we shall see.

A fuller picture of the accident, at least as the plaintiff believes it occurred, emerges from the briefs and argument in this court. The accident occurred late at night in an unlit rural area. The railroad track at the point where it crosses Joe Orr Road had not been used for a decade, and was rusty and overgrown with weeds. To one side of the disused crossing a fence had been built across the track, and on the night of the accident the cars had crashed through the fence and come to rest on the abandoned crossing. The cars were not part of a live train; no live train used this track. The track was used to store cars, and for some reason the cars rolled down the track and through the fence. The flatbed car which came to rest on the disused crossing and into which the Trevino brothers' car drove was very low—even lower than a regular flatcar, though exactly how far it stood off the track no one could tell us at argument; and it was the same dark color as the surrounding vegetation. There was no gate or electrical signal at the crossing and indeed, so far as appears, no signal of any kind—not even a cross-arms signal.

■ There may seem to be a fatal tension between Trevino's claim that the railroads failed to maintain a safe crossing and his claim that they failed to warn him of the train that was occupying the crossing. The second claim is premised in significant part on the assertion that it was an *abandoned* crossing, and if a crossing is abandoned one might suppose that there would no longer be a duty to maintain it. But this is not entirely correct. Until the right of way beneath the crossing is sold or otherwise transferred, the railroad remains the owner, and like other landowners is under a common law duty to avoid using its land in such a way as to cause injury to persons lawfully on (or for that matter off)

the land, such as persons using the public roadway at the crossing. *In re Chicago, Rock Island & Pacific R.R.*, 756 F.2d 517, 520–22 (7th Cir.1985); *Justice v. CSX Transportation, Inc.*, 908 F.2d 119, 123 (7th Cir.1990); *Hoffman v. Vernon Township*, 97 Ill.App.3d 721, 53 Ill.Dec. 135, 423 N.E.2d 519 (1981); *Hynes v. New York Central R. Co.*, 231 N.Y. 229, 131 N.E. 898 (1921) (Cardozo, J.); *Alamo National Bank v. Kraus*, 616 S.W.2d 908 (Tex.1981); Prosser and Keeton on the Law of Torts § 57, at pp. 387–89 (5th ed. 1984). It can fulfill this duty in a variety of ways, and only one of them is by warning those persons of hazards (another would be by removing the hazards), although that is the way emphasized by Trevino.

 This suit may in the end fail, but we think the district judge jumped the gun in dismissing it on the pleadings. The federal rules do not require a plaintiff to allege sufficient facts to establish his right to a judgment. All it requires, with certain exceptions enumerated in Rule 9, none of which is applicable to this case, is a "short and plain"—which is to say, nonlegalistic, nonjargonistic—statement of what his claim is. Fed.R.Civ.P. 8(a)(2), 84; Fed.R. Civ.P.App., Form 9, ¶ 2; *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 723 (7th Cir.1986). It would have been enough if the complaint had alleged that Trevino had been a passenger in a car that on February 8, 1987, at the railroad crossing on Joe Orr Road in Chicago Heights, collided with a train operated by the defendants; that the collision was due to negligence on the part of the defendants; and that he had been injured in the collision. In fact the complaint contains very little more than this. It contains some more, though, and a plaintiff can plead himself out of court by unnecessarily alleging facts which, all unwittingly on his part, demonstrate that he has no legal claim. *Id.* at 724; *Stewart v. RCA Corp.*, 790 F.2d 624, 632 (7th Cir.1986); *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 915 (7th Cir.1985); 5A Wright & Miller, Federal Practice and Procedure § 1357, at pp. 348–59 (2d ed. 1990). Not only does Trevino's complaint allege that the car in which he was riding hit the train, rather than vice versa, but in listing the duties that the defendants violated it describes the accident as having occurred at a "crossing," and there is nothing about the crossing being disused or abandoned. By pleading in this fashion Trevino created an opening for the defendants to move to dismiss the suit on the basis of the standing-car rule that the Supreme Court of Illinois had reaffirmed recently in *Dunn.*

 If this rule were that a railroad has no duty to warn of a railroad car standing in a crossing (because the car itself is warning enough), period, then Trevino's characterization of the accident as having occurred at a crossing might be fatal and might therefore justify the district court's action (though we think not, as will appear). But the rule is not that flat. It contains an exception for special circumstances. Whether the circumstances of an accident with a standing car are special cannot be determined until those circumstances are known, and in the usual case that will require going beyond the pleadings.

Whether this is the usual case depends on the precise contours of the standing-car rule. The statement of the rule in *Dunn* is authoritative, but not clear. After the passage we quoted earlier the court notes that circumstances that have been recognized as special in reported cases include "a blinding snowstorm" and "malfunctioning warning lights which erroneously indicated that the crossing was clear." But "darkness, heavy fog and poor visibility do not constitute special circumstances." 127 Ill.2d at 357, 130 Ill.Dec. at 412, 537 N.E.2d at 741, citing *Petricek v. Elgin, Joliet & Eastern Ry.*, 21 Ill.App.2d 60, 157 N.E.2d 421 (1959) (snowstorm); *Langston v. Chicago & N.W. Ry.*, 398 Ill. 248, 75 N.E.2d 363 (1947) (warning lights), and *Bachman v. Illinois Central R.R.*, 132 Ill.App.2d 277, 268 N.E.2d 42 (1971) (fog). All a blinding snowstorm does is reduce visibility, and a heavy fog can reduce it just as much. Generalizing from the blinding snowstorm, the court in *Dunn* then remarks "that if the train is not perceptible to one exercising ordinary care, the railroad may be liable."

127 Ill.2d at 358, 130 Ill.Dec. at 412, 537 N.E.2d at 741. But heavy fog could bring about an equal invisibility; so why is it treated differently from a blinding snowstorm? *Dunn* does not explain. Turning to the facts before it the court remarks that the following are alleged as special circumstances: "darkness; the presence of vehicular traffic at the crossing; the absence of lighting at the crossing; the grade of the crossing; and unnecessary distractions in the vicinity of the crossing." 127 Ill.2d at 360, 130 Ill.Dec. at 413, 537 N.E.2d at 742. These are held to be insufficient, as a matter of law, to avoid the standing-car rule; the existence of a "common law duty to construct and maintain the crossing in such a way as to promote visibility of standing trains" is rejected. Later we learn that the crossing in *Dunn* was steeper than allowed by Illinois regulations governing the safe operation of railroads. Dunn argued that as a result the headlight of his motorcycle shone not on the railroad car that he collided with, but under it. But this violation is held to be immaterial because the regulation that was violated was not intended to protect travelers from standing cars. 127 Ill.2d at 368–71, 130 Ill.Dec. at 417–18, 537 N.E.2d at 746–47.

■ One might have thought that the standing-car rule was a rule of contributory negligence and hence would not be a complete bar to liability under the regime of comparative negligence which Illinois had adopted before *Dunn*. Not so. There is no duty to warn of a standing car, and "unless a duty is owed, there is no negligence"; hence the plaintiff's negligence, slight or great, is irrelevant. 127 Ill. 2d at 365, 130 Ill.Dec. at 415, 537 N.E.2d at 744. Since, moreover, "the existence of a duty is a question of law for the court to determine," the standing-car rule is appropriately enforced by means of judgment on the pleadings.

The most puzzling suggestion in *Dunn* is that the standing-car rule has nothing to do with negligence by the plaintiff. The suggestion is potentially critical to this case. Trevino (our Trevino—not the brother) was a passenger in the car that hit the train. There is no suggestion that *he* was negligent, as Dunn, who drove a motorcycle into a train, may well have been. If the standing-car rule is a rule of contributory negligence, it would have no application to this case, since the contributory negligence of a driver is not imputed to his passenger, *Bauer v. Johnson*, 79 Ill.2d 324, 38 Ill.Dec. 149, 403 N.E.2d 237 (1980), and there is no suggestion that passenger Trevino may have contributed to the accident by being negligent, like the passenger in *Scruggs v. Baltimore & O.R. Co.*, 287 Ill.App. 310, 4 N.E.2d 878 (1936).

Yet it is difficult not to think of the standing-car rule in terms of contributory negligence. The rule allocates the burden of preventing crossing accidents between railroad and traveler, and in this it closely resembles Holmes's rejected "stop, look, and listen" rule, *Baltimore & Ohio R.R. v. Goodman*, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167 (1927), overruled in *Pokora v. Wabash Ry.*, 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149 (1934) (Cardozo, J.), which is a rule of contributory negligence per se. Under Holmes's approach the railroad has no liability to a traveler at a crossing who fails to stop, and under the standing-car rule it has no liability to a traveler who collides with a railroad car that is at rest in the crossing. In both cases the burden of prevention rests wholly on the traveler; if the accident occurs, he is solely at fault for having failed to prevent it. Both rules buck the twentieth-century trend—as strong in Illinois as anywhere, *Brenton v. Sloan's United Storage & Van Co.*, 315 Ill.App. 278, 284, 42 N.E.2d 945, 948 (1942); *Shea v. LaCost*, 16 Ill.App.2d 454, 148 N.E.2d 484 (1958); *Graves v. North Shore Gas Co.*, 98 Ill.App.3d 964, 968–69, 54 Ill. Dec. 376, 380, 424 N.E.2d 1279, 1283 (1981) —toward leaving questions of care to the jury to be decided under the broad, unelaborated standard of negligence. Prosser and Keeton on the Law of Torts, *supra*, § 35. Both rules also buck the trend, one that is also prominent in Illinois, toward making the victim's negligence a partial rather than a complete bar to damages. *Alvis v. Ribar*, 85 Ill.2d 1, 52 Ill.Dec. 23,

421 N.E.2d 886 (1981); Ill.Rev.Stat. ch. 110, ¶ 2–1116. Harmonizing *Dunn* with the overall thrust of Illinois negligence law is not easy; and the standing-car rule, as stated in *Dunn* anyway, even lacks internal coherence, because of the different treatment of snow and of fog.

We can begin to make sense of the rule by bringing to the surface the reciprocal relationship between an injurer's duty of care and a victim's duty of care. Even if contributory negligence were no defense at all—even a partial defense—to a claim of negligence, there would be cases in which it got the defendant off the hook. A reasonable person acts with reference to the likely behavior of the people with whom he interacts. The crew of a train that is stopped at a crossing will not think it necessary to toot the train's whistle at every automobile approaching the crossing, because it will assume, quite reasonably, that approaching autos will see the train and stop. So, if there is a collision, the railroad will not be deemed negligent; it violated no duty of care. This was the reasoning in the first case to apply the standing-car rule in Illinois, *Coleman v. Chicago, B. & Q.R. Co.*, 287 Ill.App. 483, 5 N.E.2d 103 (1936), as it had been in the cases from other states, such as *Gage v. Boston & M.R.R.*, 77 N.H. 289, 90 Atl. 855 (1913), that created the rule in the first place. Under this approach it makes no difference whether the suit is by a driver or by a passenger; the railroad just is not negligent for failing to take steps to prevent so improbable an accident. Therefore, Trevino's status as a passenger, which distinguishes him from the plaintiff in *Dunn*, does not take him outside the orbit of that decision.

The standing-car rule is analogous to the rule that excuses a potential injurer from having to warn of an obvious danger, *Pomer v. Schoolman*, 875 F.2d 1262, 1268 (7th Cir.1989); *Stone v. Guthrie*, 14 Ill.App.2d 137, 148–51, 144 N.E.2d 165, 170–71 (1957), both rules being instances of the larger principle that a person is entitled to assume that the people with whom he deals exercise reasonable care. That principle has been understood to imply, and rightly so, in our view, that if the accident is the sort that reasonable care by potential victims (other than a purely passive victim, such as a passenger) would always avoid, the potential injurer has no duty of care. *LeRoy Fibre Co. v. Chicago, Milwaukee & St. Paul Ry.*, 232 U.S. 340, 352, 34 S.Ct. 415, 418, 58 L.Ed. 631 (1914) (Holmes, J., concurring); *McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1557–58 (7th Cir.1987); *Davis v. Consolidated Rail Corp.*, 788 F.2d 1260, 1265 (7th Cir.1986); *Stark v. D & F Paving Co.*, 55 Ill.App.3d 921, 925, 13 Ill.Dec. 598, 601, 371 N.E.2d 315, 318 (1977); *Phillips v. Croy*, 173 Ind.App. 401, 405, 363 N.E.2d 1283, 1285 (1977). The type of railroad car in *Dunn* does not appear from the opinion, but the briefs in the case indicate that it was a tank car, not a low-slung flatcar, and the accident occurred at an active, rather than at an abandoned, crossing. If the motorcyclist in *Dunn* simply drove into a large railroad car of full height standing in an active crossing on a clear night, the inference of a high degree of negligence on his part would be pretty compelling, even if the grade was steep (though against this is the fact, again mentioned in the briefs but not in the opinion in *Dunn*, that the car was painted a flat black). And if *only* a negligent driver would drive into a train in this setting, this would be a powerful reason for concluding that the railroad had no duty to warn of the train.

The situation is different in the present case, as it is different in the *Goodman–Pokora* setting. Just as a careful person might be hit by a train at a crossing—which is why Holmes's "stop, look, and listen" rule really was a rule of contributory negligence, and not a rule about the railroad's duty of care—so in special circumstances a careful person might drive into a standing car at a crossing. The intermediate case, unnecessary to discuss, is where the driver hits a moving, not a standing, train which he could not have seen in time to avoid the collision.

The fact that in this case the driver drove into a flatcar rather than a tall car is relevant, though not decisive, on the question of special circumstances. *Owens v.*

*International Paper Co., supra,* 528 F.2d at 610. Far more important is the fact that the crossing was abandoned and that a fence had actually been put across the track at one side of the crossing. The analogy to those malfunctioning warning signals that *Dunn* cited as an example of special circumstances is close. A defendant's conduct can lull the plaintiff into ignoring what, but for that conduct, would be an obvious danger most easily averted by the plaintiff himself. The railroad in the well-known case of *Erie R. Co. v. Stewart,* 40 F.2d 855 (6th Cir.1930), employed a watchman at one of its crossings to warn of approaching trains. Unbeknownst to the driver of the truck in which the plaintiff was riding, the watchman failed to warn of an approaching train, which then struck the truck. The railroad had no duty to station a watchman at this crossing, but having done so and thereby induced reliance on the practice by travelers it could not discontinue the service without notice; it could not assume that a reasonably careful plaintiff could protect himself. Of course that was not a standing-car case; courts that follow the standing-car rule regard the car as warning enough. But that is in the absence of special circumstances, one of which could be the creation of an impression that the crossing was no longer in use and therefore drivers should not expect to encounter a train in their path. (There has been such a case, as we shall see, though not in Illinois.) It was on this ground that *Langston,* after citing with approval the principle that we illustrated with reference to the *Stewart* case, found the malfunctioning warning signal to be a special circumstance. 398 Ill. at 255, 75 N.E.2d at 366. The same misleading impression was created here by the placing of a fence across the track. No one would suppose that a track was in use when to use it a train would have to plow through a fence. Even the fact that a track is used rarely has been held to constitute a special circumstance, because of the tendency to lull the traveler into a false sense of security. *Broberg v. Northern Pacific Ry.,* 120 Mont. 280, 293, 182 P.2d 851, 858 (1947).

Against this it can be argued that a careful driver can be expected to scan the road ahead of him for obstacles whether or not he is approaching a crossing. We asked the defendants' lawyer whether it would have made a difference if there had never been a crossing where the accident occurred but the flatcar had simply been derailed (through the defendants' negligence) and rolled into the middle of Joe Orr Road. Consistent with the argument that we have just sketched, the lawyer said no, it would make no difference, unless of course there was a blinding snowstorm. We are skeptical. The same argument could be made in a case in which an electrical warning signal malfunctioned, indicating that the coast was clear when in fact a train was sitting on the track; yet *Dunn* said that that was a special circumstance, even though the train was visible. Taken to its logical extreme the argument implies—what no one believes—that you can, without any risk of liability, abandon your car in the middle of a highway at night, without lights, counting on the other users of the highway to see the car in their headlights and avoid crashing into it. *Montgomery v. National Convoy & Trucking Co.,* 186 S.C. 167, 195 S.E. 247 (1938).

The remaining mystery is reconciling fog with snow, and is quickly cleared up by an examination of the *Petricek* and *Bachman* cases. In *Petricek,* the snow case, the plaintiff stopped his car right before he reached the track, opened his window, and looked out; in other words he was careful. In *Bachman,* the fog case, the plaintiff zipped through heavy fog at 45 m.p.h., smack into the train. The difference between the cases is not, then, the difference between snow and fog; either can create a special circumstance placing on the railroad a duty to warn; the difference is that in one case (*Bachman*) the plaintiff was barred by contributory negligence, and in the other (*Petricek*) not. The standing-car rule, as we have seen, is not a rule of contributory negligence; but contributory negligence remains a possible defense in a case in which, the rule not applying because of special circumstances,

the railroad needs a defense. Cf. *Scruggs v. Baltimore & O.R. Co., supra.* Nowadays of course contributory negligence is not a complete defense, but it was when *Bachman* was decided.

■ Construing the facts favorably to the plaintiff in our case, as we must do when a case is dismissed on the pleadings, we have here a situation in which a driver at night, having every reason to believe that a railroad car would be about as likely to be found in the middle of the road as an escaped circus elephant, drives into the car because the car is low to the ground and is of the same dark color as the surrounding vegetation, so that it does not reflect his headlights clearly. This seems if anything a stronger case than that of the blinding snowstorm, since the snowstorm is a warning to the driver to slow down and drive with utmost care, and there was no such warning here. Considering that there has been no pretrial discovery, so that for all one knows there are still other facts tending to bring this case within the special-circumstances exception to the standing-car rule, we are not prepared to say that the case is governed by *Dunn.*

■ And this for a separate reason as well. It is unclear that this case is within the scope of the standing-car rule at all. As described in *Dunn* and the other cases, it is a rule about crossings. For a good reason: a crossing is by definition the only place where a railroad line intersects a road. But what is a crossing? Is the intersection of an abandoned line with a road a crossing until the tracks are pulled up? Cf. *In re Chicago, Rock Island & Pacific R.R., supra.* Once a crossing, always a crossing? Possibly yes, for reasons stated earlier, if we are speaking of the railroad's liability to users of the road, at least until the railroad ceases to own the right of way. Probably no, if we are speaking of the application of the standing-car rule. The rationale of that rule is related to the expectations that a traveler brings to a crossing and hence to the expectations that the railroad can reasonably entertain about the traveler's behavior at the crossing. The traveler knows it to be a place that may be occupied by a train blocking his right of way, and this knowledge imposes a duty of vigilance. But if the railroad has taken steps to remove any expectation that a train might be encountered—which, it can be argued, the defendants did here, most dramatically by running a fence across the track next to the crossing—the traveler's duty of vigilance is less and the railroad is correspondingly less entitled to assume that it need take no measures to prevent an accident. On the scanty record that is all we have before us, we are not prepared to hold that this disused crossing was a crossing within the meaning of the standing-car rule, which, contrary to the defendants, we believe to be applicable only to accidents at live crossings.

■ Although this is the first case we have discovered dealing with an abandoned crossing—which is no surprise, since how likely is a railroad car to be found on a stretch of abandoned track?—we have found a case where the *appearance* that the crossing had been abandoned was held to be a special circumstance on the lulling rationale that we discussed in connection with the *Stewart* case. *Atlantic Coast Line R.R. v. Kammerer,* 239 F.2d 115, 118–19 (5th Cir.1956). It hardly matters whether the standing-car rule does not apply to abandoned crossings, or abandonment is a special circumstance because it causes the traveler to lower his guard. And because it does not matter, we need not spend too much time deciding whether Trevino has waived the argument that the accident did not occur at a crossing within the meaning of the standing-car rule. His complaint and other submissions describe the place of the accident as a "crossing," and do not qualify it with "disused" or "abandoned." But it would be unduly harsh to presume at this early stage of the litigation that he intended this as a legal as distinct from a factual description. Of course in a literal sense the accident occurred at a place where the track "crossed" the road, but for reasons we have just explained it does not follow that this place was a "crossing" within the meaning of

*Dunn.* By arguing that *Dunn* does not apply to this case, Trevino has sufficiently preserved the argument that one reason it does not apply is that the accident did not occur at the *kind* of crossing to which the standing-car rule applies.

 And speaking of a scanty record, the facts that Trevino's counsel presented to the district judge in his opposition to the defendants' motion for judgment on the pleadings and to us in his brief and argument in this court are not part of the evidentiary record, and for all we know are untrue or incomplete. It makes no difference to our disposition of this appeal. As we explained in *Orthmann v. Apple River Campground, Inc., supra,* 757 F.2d at 914–15, a plaintiff challenging dismissal of his complaint (or indeed his suit) for failure to state a claim is free to show, with reference to facts as yet hypothetical, that he may be able to establish a set of facts, consistent with though not necessarily enumerated in his complaint, that would entitle him to a judgment. Whether he *can* establish them is a separate question, not answerable at the pleadings stage of the lawsuit.

We think it worth adding, however, that insofar as the complaint alleges, not a duty to warn, but a duty to comply with certain Illinois statutes regulating railroad crossings, it fails to state a claim. *Dunn* holds that statutes which forbid trains to stop at crossings for more than ten minutes (this is the statute on which Trevino places the greatest weight), or which require particular warning signals at crossings, have no application to standing-car collisions. The purpose of these statutes is to prevent tying up traffic (the purpose of the ten-minute rule) or to protect the traveler from being hit by a train (the purpose of requiring warning signals); in neither case is the purpose to protect a traveler from hitting a train. 127 Ill.2d at 368–71, 130 Ill.Dec. at 417–18, 537 N.E.2d at 746–47. Such statutes are doubly inapplicable here, because they are statutes designed for live crossings and an important strut beneath the plaintiff's case is that the crossing at which he was injured had been abandoned.

Nevertheless the case was dismissed prematurely and must be returned to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.