Paul S. Petricek, Appellee, v. Elgin, J. & E. Ry. Co., Appellant.

Gen. No. 47,587.

First District, Second Division.

March 24, 1959.

Rehearing denied April 14, 1959.

Released for publication April 21, 1959.

60

Stevenson, Conaghan, Hackbert, Rooks and Pitts, of Chicago (Harlan L. Hackbert, Dean A. Olds, of counsel) for appellant.

Rudolph Albert, William Torok, George T. Murphy, Jr., of Chicago (Rudolph Albert, George T. Murphy, Jr., of counsel) for appellee.

JUSTICE MURPHY delivered the opinion of the court.

Plaintiff sued for damages for personal injuries, received when he drove his automobile into the side of defendant's freight train, during a heavy, record-breaking snowstorm. Defendant has appealed from a $10,000 judgment and from the order denying its motions after verdict. No questions are raised as to the amount of the verdict, the conduct of the trial or to instructions given to the jury.

Defendant contends that plaintiff failed to prove, as a matter of law, actionable negligence on the part of the defendant—that under the law there was nothing which defendant should have done, and under the facts of the case there was nothing defendant could have done, to prevent the accident.

Plaintiff was driving north on State Street in Chicago Heights, on Christmas Day, 1951, and shortly before 2:00 a. m., drove into the side of defendant's

train, standing in the intersection of State Street and a railroad crossing. The crossing consists of eight east and west tracks, four of which, belonging to defendant, and from south to north, are, respectively, the fourth, fifth, sixth and seventh tracks, at the top of an incline from the south. There were six overhead crossing lights, two of them over defendant's four tracks.

The train, westbound, reached State Street, the eastern boundary of Chicago Heights, at about 1:45 a. m. It had been traveling on the northernmost of defendant's four tracks, the seventh track from the south to the north, and was stopped because the engine was derailed. There is no evidence in the record as to how or when the derailment occurred, or exactly how long the train was standing before plaintiff drove into it. There is no testimony of any warning by defendant's employees of the standing train. The seventeen inches of snow on the ground on Christmas Day was the most ever recorded for that holiday in sixty-seven years.

Plaintiff was familiar with the crossing, and as he approached it he stopped, rolled his windows down, looked to the right and left, and listened for whistles. It was snowing heavily, and he could see only 10 to 15 feet ahead. Hearing nothing and not seeing the standing train, he stepped on the accelerator, traveled 15 or 20 feet and "hit into something." Not knowing what he hit, he got out, shaken and bleeding, and found that his car was wedged between two coal cars. There was no one around, and he blew his horn for several minutes to attract attention. The train started to move, dragging his car with it. He released an air hose valve, and the train stopped. There was no traffic on the road, so he walked to a house about two blocks distant and received first aid. Leaving the house, he stopped a passing tow truck, which carried him back to the scene of the accident, where the train was still ob-

63

structing the crossing, and an eastbound train of defendant was stopped west of the crossing. He had been gone about a half hour.

Police officers testified for plaintiff that the lights were 25 to 30 feet above the highway; that the illumination was poor; that there was a hump at the point of collision; and that the reflection from lights of automobiles approaching on the incline "would not fall on the cars, it would fall underneath."

The rear brakeman of the train was the only member of the train crew who testified. About three minutes after the train stopped, he and the conductor (who died before trial) received a whistle signal to protect the rear of the train. About five minutes later, he left the caboose, which was 45 to 50 car lengths east of the crossing, and went east about 300 feet beyond the caboose. At the same time, the conductor, carrying a lighted white lantern, started west for the head end.

There was testimony of the engineer and fireman of defendant's eastbound engine. As they approached Wentworth Avenue, a block or two west of State Street, coming from the west going east, a block signal indicated trouble ahead. They proceeded at restricted speed and noticed a westbound train standing, with the engine at a switch east of Wentworth Avenue. They did not see any of the members of the crew. A man signaled them and told them that an automobile had run into the side of the westbound train. They stopped just west of State Street and could see the automobile by means of the State Street lights. They saw no one at the crossing and pushed the automobile off the tracks. A little later they saw the driver and took him into the engine cab to wait for the doctor. They observed the automobile was covered with ice. "Everything was covered with ice that night, locomotive, cars at the crossing. The whole car was covered with ice and the windows on the side of the driver

64

were icy. About the time the tow truck pulled away I observed lights coming from the caboose. He finally got down to the crossing. It was the conductor. . . . I think the tow truck was just moving away."

■ A train, either moving or standing upon a railroad crossing, is generally held to be adequate notice and warning of its presence to any traveler who is in the exercise of ordinary care for his own safety, and the railroad is under no duty to give additional signs, signals or warnings. (Coleman v. Chicago, B. & Q. R. Co., 287 Ill. App. 483, 489 (1936).) Defendant contends this rule is without exception, and this contention raises the vital point.

■ In each Illinois case cited, the court finds some fact, either in the complaint or in the evidence, showing that the presence of the train or obstruction was in some measure visible and perceptible. Perceptibility, therefore, is an important element in the general rule —that the presence of the train is adequate "notice" or "warning." In the Coleman case, the evidence showed that the view of the crossing was unobstructed for at least 150 feet, and the driver saw the train when he was 30 or 40 feet away. In Cash v. New York Central R. Co., 294 Ill. App. 389, the court said it was apparent that at some spot in the neighborhood of 200 feet east of the crossing, the lights of an approaching automobile would have disclosed the presence of a standing freight train upon the crossing. In Overstreet v. Illinois Power & Light Corp., 356 Ill. 378, where a snow sweeper, temporarily stopped during a severe snowstorm, was hit from the rear, the court noted that there were lights burning in the sweeper inside the rear windows, and there was nothing to prevent the lights from being visible to one approaching the car from the rear.

In Fox v. Illinois Cent. R. Co., 308 Ill. App. 367, however, the court held that a complaint alleging

65

many of the unusual conditions outlined above, did not state a cause of action. But the court reviewed and obviously relied on the Cash, Coleman and Overstreet cases, and its decision should be qualified by the peculiar facts of perceptibility found in each case. A recent crossing case cited by defendant, Turner v. Illinois Cent. R. Co., 319 S.W.2d 539 (1959), is not in point. It was claimed that the crossing was unusually dangerous. This case also indicates that the court considered the question of perceptibility by finding that plaintiff "first saw the train moving across the crossing when he had approached to a point one hundred feet of it and beyond which point he could not or did not stop. Plaintiff's own testimony would reasonably support the inference that he was not attentive. . . . Realistically, it was quite as if plaintiff had not looked or listened at all."

██ We believe the Illinois cases carry the underlying implication that the degree of care required of railroads and general traffic at public crossings depends upon the facts and circumstances of each particular case, and that one cannot recover for driving his automobile into a train standing across a crossing, except under extraordinary or unusual circumstances. Miles v. American Steel Foundries, 302 Ill. App. 262, 266.

In the instant case plaintiff testified that he did not see the standing freight train across the crossing, during this blinding snowstorm, therefore it did not serve as a warning or notice to him of its presence. A principal reason for the general rule, the element of perceptibility, i. e., notice or warning, is absent. The crew evidently thought the situation serious enough to warn approaching trains from the east, and we believe reasonable men would believe it negligence, under the circumstances, not to warn crossing traffic of the crossing obstruction. The train crew consisted

66

of an engineer, fireman and a head brakeman, all riding at the head end, and a conductor and rear brakeman at the rear end. The caboose was about 2500 feet east and the derailed engine about 24 car lengths or 1200 feet west of the crossing. The only member of the crew to appear on the scene was the conductor, who arrived more than a half hour after the occurrence.

■ ■ We are of the opinion that defendant's employees, the crew in charge of the train, ought, in the exercise of reasonable care, to have known that the train was obstructing the highway, under extraordinary and unusual weather conditions, reducing visibility to a minimum. It was their duty, under the unusual conditions, to protect the traveling public against this peril created by them, by giving such warning as the conditions warranted. Whether they were negligent in not so doing, in the instant case, was a question for the jury.

Defendant also contends that plaintiff has failed to prove his freedom from contributory negligence, because he was thoroughly familiar with the railroad crossing, and though he could only see 10 or 15 feet ahead, he stepped on the accelerator and was gaining speed when he struck the train.

■ ■ We agree with defendant, that there is no double standard of negligence and contributory negligence. If the storm required defendant to give additional warnings, it required equally of plaintiff that he take additional precautions for his own safety. The degree of care required of plaintiff must be commensurate with the danger to which he is knowingly exposed.

Plaintiff testified, "I stopped my car and rolled my windows down and looked to the right and left and listened for whistles. I did not hear anything, so I stepped on the accelerator and started to cross the

67

railroad crossing." He was going up an incline and, of necessity, would have to step on the accelerator. What would have been a proper speed commensurate with crossing a place of danger, under the circumstances here portrayed, is a question on which fairminded men might differ. Plaintiff had to do something. Some may think, believing the crossing clear, he should have "stepped on it" and passed over it quickly; others may think he should have proceeded slowly, and some may think he should not have started to cross at all.

A blinding snowstorm creates conditions for which no standard of conduct may be determined. Questions which are composed of factors sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. (Ney v. Yellow Cab Co., 2 Ill.2d 74, 85 (1954).) Railroad crossings are dangerous places, and in crossing them a person must approach the tracks with a degree of care proportionate to the known danger. (Tucker v. New York, C. & St. L. R. Co., 12 Ill.2d 532, 535 (1957).) Whether plaintiff exercised that degree of care, which was proportionate to the danger known to him at that time, was a question for the jury.

We conclude that the judgment below, on the record, is not contrary to the Illinois rule. We cannot say that in considering the evidence most favorable to plaintiff, with all reasonable inference to be drawn therefrom in its aspects most favorable to him, and rejecting contrary or contradictory evidence, that, as a matter of law, the record shows a total failure to prove due care by plaintiff or actionable negligence by defendant.

For the reasons given, the judgment is affirmed.

Affirmed.

LEWE, P. J. and KILEY, J., concur.