Roy BACHMAN, father and next friend of LE Roy BACHMAN, a minor, Plaintiff-Appellant, *v.* ILLINOIS CENTRAL RAILROAD COMPANY, Defendant-Appellee.

(No. 11286;

Fourth District—March 18, 1971.

Dunn, Dunn, Brady, Goebel, Ulbrich & Hayes, of Bloomington, (Frank M. Brady, of counsel,) for appellants.

Fleming, Messman & Lapan, of Bloomington, (Roger D. Lapan, of counsel,) for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The Circuit Court of McLean County directed a verdict for the defendant-railroad at the close of plaintiff's evidence in this action for personal injuries arising out of an automobile collision with a freight train of the defendant at a crossing known as "Burns Crossing". The accident occurred on December 16, 1966, at about 9:45 P.M.

LeRoy Bachman, then age 18, herein referred to as plaintiff, accompanied by five other boys, was driving a 1962 Oldsmobile. The trip originated at a Mr. Quick Drive-In located in Normal, Illinois. The plaintiff and four of the boys worked at this drive-in. They finished work at around 7:00 P.M., went to a store to cash their pay checks and then picked up another passenger, Tom Bainbridge, at his home, for the purpose of going to a shopping center to do some shopping. This they did, then went to a restaurant or drive-in where they visited with some friends. They

then departed, with the plaintiff driving. They drove on Route 66 to Route 51 and south on Route 51, and turned east onto a road known as "Burns Road". On the night in question the weather is described in the record as extremely foggy, visibility poor, and patches of heavy fog. In some places visibility would be reasonably good and it was clear, and then they would encounter fog where visibility was bad. The evidence indicates that the plaintiff was driving at approximately forty-five to fifty miles per hour as he proceeded on Burns Road. Plaintiff was driving in an easterly direction as he approached the Illinois Central Railroad crossing. The railroad tracks run in a north-and-south direction, and there is a slight jog or bend in the road before the crossing.

John Williamson, a surviving passenger, testified that he was familiar with Burns Road and with the crossing, and that as they proceeded down the road he looked to see if a train was approaching. He looked to the south and it appeared clear. He looked back to the north and didn't see anything at first glance. Then he suddenly saw a train or the markings on freight cars. A number of cars passed in front of them from the time he first observed the train until the impact took place. According to the testimony of Williamson, plaintiff applied his brakes when Williamson first observed the train, or concurrently with that observation. The brakes were applied with full force and were retained at full force from the time of the observation of the train until the collision. Ninety-seven feet of skid marks, continuous up to a point of one or two feet west of the railroad tracks, were described in the evidence. The plaintiff's automobile collided with the 56th or 57th car behind the engine. The speed of the train, estimated on the basis of the way the cars were flashing before them, was stated to be at least sixty miles an hour. The freight train, traveling in a southerly direction, consisted of 121 freight cars pulled by two Diesel engines and was approximately a mile and a half in length. The only lights on the train was a light on the engine at the front and a light on the caboose at the end of the train. There were no lights on the side of the cars, no reflectors on the side of the cars, and no illuminating sheathing or markers.

There is evidence in the record as to obstructions at the crossing, it being the contention that buildings, trees, a railroad cut and some growth amounted to an obstruction of the crossing in three of the four quadrants. Trains coming from the north were described as not visible until they came out of a cut some 190 feet north of the crossing. The crossing was marked by a railroad cross-buck sign which was described as weather-beaten and showing very little paint. As one approaches the crossing from the west, a cross-buck is on the south side of the road and was described as being visible about 150 feet west of the crossing.

The evidence is that the plaintiff was familiar with the crossing, had lived on a farm in the area and had traversed the crossing on many prior occasions, had seen trains on the track in daylight hours, but his testimony was that he had never seen any trains at the crossing after dark. He had never traveled on the road over the crossing when the weather conditions were foggy. Plaintiff was driving with his lights on low beam, but he was unable to testify as to the distance illuminated with the low-beam lights.

There is evidence that an advance warning road marker was located 342 feet west of the crossing itself. There is controversy in the record as to whether the advance warning sign was put up before or after the accident, and it is further contended that the advance warning sign was improperly located in that the regulations relating to its placement would require that it be erected 400 to 700 feet in advance of the condition of which it warned. This matter and other evidentiary matters as to expert testimony need not be considered in view of our conclusion that the circuit court properly directed a verdict for the defendant on the issue of contributory negligence as a matter of law.

■■ In *Pedrick v. Peoria & Eastern R.R.* (1967), 37 Ill.2d 494, 229 N.E.2d 504, the Supreme Court, in an exhaustive opinion, set forth the standard that must be applied in determining whether a verdict should be directed or a judgment notwithstanding a verdict should be entered. The rule established by that case is that verdicts ought to be directed only in those cases in which all of the evidence when viewed in its aspect most favorable to the opponent so overwhelmingly favors the movant that no contrary verdict based on such evidence could ever stand. Following the rule in that case, the trial court, in the instant case, determined that the plaintiff was guilty of contributory negligence as a matter of law, and for that reason directed a verdict. Thus, the issues of the custom and usage in the industry as to protective devices—reflectorized sheathing—and admissibility of evidence relating thereto become immaterial to our consideration.

A railroad crossing is a place of danger, and in crossing it a person must approach with a degree of care proportionate to the known danger. (*Tucker v. New York, C. & St.L.R.R.* (1958), 12 Ill.2d 532, 147 N.E.2d 376.) A train, whether moving or standing upon a railroad crossing, is generally held to be adequate notice and warning of its presence to the driver who approaches the crossing if such driver is in the exercise of ordinary care for his own safety. (*Petricek v. Elgin, J. & E. Ry* (1st Dist. 1959), 21 Ill.App.2d 60, 157 N.E.2d 421,) and cases there cited. In the *Petricek* case the court recognized as an exception to this rule fact situations involving extraordinary or unusual circumstances so as to preclude

the train from being visible to one approaching the crossing. In the *Petricek* case the extraordinary circumstance was a blinding snowstorm. Under the facts of that case the court held that the defendant's negligence and the plaintiff's freedom from contributory negligence would be a proper question for determination by the jury. The evidence was that the plaintiff was familiar with the crossing and as he approached it he stopped, rolled down the window of his car, and looked and listened. The snowstorm was such that a standing train was not visible.

In *Schott v. Atchison, T. & S.F.R.R.* (1st Dist. 1968), 91 Ill.App.2d 135, 234 N.E.2d 414, the court referred to the rule recited in *Petricek* relating to perceptibility, but determined that the fact situation there found presented a jury question. Perhaps the multirail urban crossing was a distinguishing factual circumstance.

At 84 A.L.R.2d 813, there is an annotation with reference to injuries due to a road vehicle running into a train or car standing on a railroad crossing. In that annotation it is suggested that standing cars present an increased hazard compared to a moving train. Likewise, it is there suggested that where atmospheric or other conditions beyond the control of the railroad reduce visibility and increase the possibility of a collision, the operator of the motor vehicle must exercise increased care proportioned to the hazard (84 A.L.R.2d at 876). Familiarity with the crossing is also referred to as a factor showing contributory negligence.

■■ Here, the evidence is that the plaintiff approached the crossing under circumstances of limited visibility because of fog at a speed of forty-five to fifty miles per hour, and did not apply his brakes until some ninety-seven feet before the crossing, at which point the moving freight train became visible. He knew of the existence of the crossing, having traversed it many times. He did not take the precautions outlined in *Petricek*. The record, as the trial court determined, is without evidence of due care on the part of the plaintiff, but is such as to establish the plaintiff's contributory negligence as a matter of law. The trial court, acting under the authority of *Pedrick*, properly directed a verdict, and that action is affirmed.

Judgment affirmed.

SMITH, P. J., and TRAPP, J., concur.