ROBERT F. REISER, as Admr. of the Estate of Lionel J. Edmondson, Deceased, Plaintiff-Appellee, *v.* ILLINOIS CENTRAL RAILROAD COMPANY, Defendant-Appellant.

(No. 70-84;

Third District—June 9, 1971.

942

Eva L. Minor, of Kankakee, for appellant.

Edwin W. Sale, of Kankakee, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This appeal stems from an action instituted by plaintiff Robert F. Reiser, as administrator of the estate of Lionel J. Edmondson, deceased, against Illinois Central Railroad Company for damages by reason of the alleged wrongful death of Lionel J. Edmondson. The trial of the cause resulted in a hung jury. The trial court had reserved its ruling on defendant's motion for directed verdict at the close of all the evidence. Defendant also filed a post-trial motion renewing the motion for directed verdict. The trial court denied the motion for directed verdict and the post-trial motion. An interlocutory appeal was filed under Supreme Court Rule 308 (1969 Illinois Revised Statutes, ch. 110, par. 308) and the trial court certified that a question of law was involved as to which there was substantial ground for difference of opinion and that an immediate appeal from the order might materially advance the ultimate termination of the litigation. This Court allowed application for leave to appeal and the cause is now before us for disposition. The issue as certified by the court was whether the evidence was sufficient as a matter of law to establish due care on the part of the decedent, and, also, whether the evidence was sufficient to establish negligence on the part of the defendant as charged in the amended complaint.

The charges in the complaint as amended essentially were that defendant caused a train of freight cars to be stopped across the highway

in a negligent manner; that defendant neglected to provide adequate warning to motorists traveling in an easterly direction of the presence of the freight cars on the track; that defendant failed to maintain a crossing and approaches thereto so that they were at all times safe as to persons and property in violation of 1969 Illinois Revised Statutes, ch. 114, par. 62.

The evidence indicates that the decedent, Edmondson, on August 10, 1965, drove his 1960 Rambler automobile in an easterly direction along Illinois Route 115 and collided with a dark hopper car which was astride the highway on defendant's railroad track. The track intersected the highway perpendicularly in a north and south direction. The collision occurred at 9:10 P.M. Daylight Saving Time at a time when the night was dark, but clear, and the highway pavement was dry. The automobile driven by decedent struck the second set of wheels of the hopper car. The wheels were located astride the highway's south or eastbound lane on which decedent had been traveling. Skidmarks terminating at the point of impact were visible the next day in this lane for a length of approximately 60 feet. The highway pavement and the train track were on the same level and the countryside surrounding was flat.

The hopper car referred to was the 65th car in defendant's 97 car train. The train had been moving in a southerly direction but prior to the collision had been halted for 4 or 5 minutes. The engineer had stopped the train to allow a brakeman to throw a switch to enable the train to move onto the main track. At the time the train came to a halt, the emergency brakes engaged, and the trainmen later found that a drawbar had dropped separating two cars and breaking their connecting air hose. The track on which the train was halted was a single track intersecting the highway and was used by the railroad only twice each day—once in the morning and once in the evening.

There were no bells or flashing devices at the crossing. A standard reflectorized railroad warning sign containing a black cross and two "R's" on an orange background was located approximately 550 feet along the highway to the west of the track. A reflectorized cross-arm sign was placed on the highway just before the track on the west side. At the time the train was stopped, a brakeman lit a flare and threw it to the south side of the highway on the east side of the train as the train passed through the intersection with the highway. At the same time the engineer threw a flare to the west side. Apparently this flare was not ignited at or about the time of the accident. No other witness recalled seeing a lighted flare at the place where the engineer's flare should have landed. This should have been on the side from which the decedent's car approached.

The only eyewitnesses to the collision were Wayne Ramsey and his wife, Marilyn. The automobile driven by Ramsey had stopped on the north or westbound lane of the highway to let the train pass. There were no other automobiles in the area. At the time the Ramsey automobile approached the intersection from their side, the train was still moving. They stopped their automobile and waited. After the train had been stopped about 4 or 5 minutes the Ramseys observed the lights of a car coming from the west below the bed of the hopper car which was so shaped so that there was more visibility under it than under most other types of freight cars. They first noted such lights when the decedent's automobile was about a mile away. When the approaching car was coming closer to the train the Ramseys could tell that it would collide with the freight train. Mr. Ramsey heard the approaching automobile brakes squeal before the automobile hit the wheels of the hopper car. When he surveyed the west side of the train after the collision he said, "It was pitch black".

A State Highway Patrolman who investigated the accident estimated from the marks on the pavement that decedent's automobile had been traveling at a moderate speed not exceeding 65 miles per hour, the speed limit at this point. Mr. Ramsey also confirmed that decedent's automobile was being driven at a normal rate of speed. There was evidence that approximately 1,000 automobiles went over this crossing each 24-hour period. There was also evidence that the flares which were thrown, were supposed to last 10 minutes. It was indicated that if they lay flat, they do not burn for that period of time.

■■ Defendant contends that under the precedent of *Pedrick v. Peoria & Eastern Railroad Company,* 37 Ill.2d 494, 229 N.E.2d 504, it is entitled to a directed verdict by reason of the fact that all the evidence, when viewed in its aspect most favorable to plaintiff, so overwhelmingly favors the defendant that no contrary verdict could stand. We do not agree with this contention. The railroad company had a duty not to create an unreasonable risk of harm to decedent. As stated in *Wagner v. Toledo, Peoria & Western Railroad,* 352 Ill. 85, 91, 185 N.E. 236:

"A railroad company in the running of its trains is required to exercise ordinary care and prudence to guard against injury to those who may be traveling upon the public highway and crossing its tracks. The fact that the statute may provide one precaution does not relieve the company from adopting such others as public safety or common prudence may dictate."

Essentially, the court in the *Wagner* case stated that the nature of the railroad's conduct was to be measured against the degree of the hazard to be perceived.

In *Baker v. Norfolk & Western Railway Company,* 120 Ill.App.2d 296, 296 N.E.2d 887, the court stated that whether a particular crossing is "extra hazardous" is a jury question. The jury's determination that a crossing is extra hazardous at the time of an accident is implicit in its finding that the defendant did not act in a reasonably careful manner in failing to provide flares, lights, bells, gates, or otherwise doing or omitting to do what reasonably should have been done, considering the condition existing at the crossing as shown by the evidence. While no statute or regulation of the Illinois Commerce Commission required additional protection at the crossing in the instant case, there is a common law duty on railroads, independent of the statute or regulation, to protect crossings with adequate safety devices other than the usual cross-arm sign, when special or unusual conditions cause such crossing to be "extra hazardous" and warrant additional protection. This may be temporary in nature such as the condition which existed in the instant case when the crossing was blocked for an extended period under conditions which would not give warning to approaching motorists. Burning fuses would certainly have been reasonable procedure from standpoint of the railroad crew. While the characterization of "extra hazardous" is in reality a qualitative evaluation of the relationship between the danger and conduct reasonably necessary to prevent injury as a result of it, the question before us fundamentally is whether the railroad discharged the duty it owed specifically to decedent under the circumstances existing in the present case. It is not necessary that we find that a crossing is "extra hazardous" at all times and under all conditions. It is the nature of defendant's actions or omissions to act and the knowledge with which defendant is charged at the particular time with which we are concerned. This determines whether or not defendant's conduct is unreasonable and negligent as to the decedent.

Relating this analysis to the particular facts under consideration in this cause, it is obvious that the railroad knew or should have known that the train was blocking Route 115 for an extended period of time; that the night was dark and that no illumination was received from the railroad cars which were astride the highway; that the cars were not moving and that the light of the engine a half mile away could not be seen at the crossing; that the flares thrown to the west of the train at Route 115, on the side from which decedent was approaching, may not have remained lighted; that although the flare thrown to the east of Route 115 at the crossing might have remained lighted, the light may have been blocked from view to the west by wheels of the hopper car; that a mechanical failure created an emergency which kept the train halted across the road when no lights or warning indicated its presence;

and that there was no showing that any member of the train's crew made any effort either to examine the crossing at Route 115 or to provide any additional warning of the train's presence to travelers on the highway in the direction from which decedent was approaching. The jury could have determined that the engineer and brakeman who threw the flares had actual knowledge of the danger; that they allowed the risk to exist; and that such conduct became unreasonable when defendant's agents failed to warn decedent of the presence of the train.

The other issue to be determined is whether plaintiff's decedent was in exercise of due care at the time of the accident. Due care on part of decedent under such condition, involves avoiding risks reasonably perceived. It is apparent that plaintiff's intestate was traveling on Route 115 at a reasonable rate of speed on a dark night; that he knew the road and knew that he seldom, if ever, encountered trains at the track intersection; that although he may have been attentive to the possibility that a train could be present, because he knew that a railroad track did intersect the highway, there was nothing from what he was able to see in front of him to warn him that a train was on the track or traversing the track. On the basis of the record, without seeing any train lights, flares or other warning signals signifying the presence of a stopped train, and seeing the Ramsey automobile headlights in the distance in the oncoming traffic lane decedent could have reasonably concluded that there was nothing on the track to obstruct the roadway upon which he was traveling. Under such circumstances, we could not say, as a matter of law, that the decedent failed to exercise ordinary care for his own safety. The evidence indicated that he was first able to perceive that there was a train on the track from a distance of somewhat more than 60 feet, but that, with the exercise of reasonable care, he was unable to stop his automobile prior to colliding with the train.

■■ Our attention has been called to *Overman v. Illinois Central Railroad Company*, 34 Ill.App.2d 30, 42, 180 N.E.2d 213, and other similar cases. While the *Overman* case, referred to, involved facts quite different from the instant case, the jury in the case before us could well find "obstructions or distractions" for which even the *Overman* case would excuse decedent's failure to see the object with which he collided. The court in that case stated that there may be facts and circumstances such as obstructions to view or distractions which might mislead a plaintiff, without his fault, or excuse a failure to look and listen. Under the facts and circumstances in this cause, we believe that the question of whether or not decedent was in the exercise of due care and caution for his safety became a question of fact for the jury. The court would not have been justified in directing a verdict. Under the principles announced in

the *Pedrick* case, *supra,* all of the evidence, when viewed in its aspect most favorable to the plaintiff could justify a verdict in favor of plaintiff. As indicated in *Petricek v. Elgin, Joliet & Eastern Railway Co.,* 21 Ill. App.2d 60, 68, 157 N.E.2d 421, "questions which are composed of factors sufficient to cause reasonable men to arrive at different results should never be determined as matters of law." The court there pointed out that railroad crossings are dangerous places, and in crossing them, a person must approach the tracks with a degree of care proportionate to the known danger. Whether plaintiff exercised that degree of care which was proportionate to the danger known to him at that time, became a question for the jury. While the *Petricek* case involved a snowstorm, the unusual situation existing in the present case of lack of visibility of the train, with apparent conditions indicating that the highway was open at the crossing, created a condition as a result of which both the issue of exercise of due care on part of the decedent and of the negligence of defendant became questions of fact for the jury determination.

We conclude that the order of the trial court denying appellant's motions was proper and should be affirmed. The order of the Circuit Court of Kankakee County will, therefore, be affirmed and this cause will be remanded to such court for further proceedings.

Affirmed and remanded.

STOUDER and SCOTT, JJ., concur.