CHERYL BENJAMIN, Indiv. and as Adm'r of the Estate of Russell Benjamin, Deceased, Plaintiff-Appellant, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, *et al.*, Defendants-Appellees.

Third District   No. 3—91—0226

Opinion filed February 18, 1992.

BARRY, P.J., dissenting.

David V. Dorris, of Jerome Mirza & Associates, Ltd., of Bloomington (Thomas M. Harris, of counsel), for appellant.

Stephen J. Heine and Robert V. Dewey, Jr., both of Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, of counsel), for appellee Atchison, Topeka and Santa Fe Railway Company.

Robert C. Stoerzbach, of Barash, Stoerzbach & Henson, of Galesburg (John W. Robertson, of counsel), for appellee Kenneth Perkins.

JUSTICE GORMAN delivered the opinion of the court:

This is a wrongful death case arising from a collision between a van and a stationary train. The van was subsequently struck by another train, which was on an adjacent track. The defendants were granted summary judgment. We affirm.

On December 14, 1985, Russell Benjamin was killed when his van collided with a train in Galesburg. He was driving in a northerly direction on his way home from a tavern at about 2 a.m. Intersecting the road was the railroad crossing of defendant Atchison, Topeka, & Santa Fe Railway Co. (Santa Fe). The crossing consisted of five sets of tracks, including two mainlines running east-west. The crossing was marked with a sign, red flashing lights, warning bells and a gate or arm which lowered automatically when a train approached.

On December 13, between 6:30 and 7 p.m., defendant Kenneth F. Perkins, Sr., was driving his tractor-trailer truck through the crossing. As he was doing so, an approaching train activated the signals, causing the gate to lower. The south gate caught on Perkins' trailer and broke off of its mountings. Perkins made no report of the severed crossing arm.

The following morning, Santa Fe stopped a westbound freight train on the north mainline of the crossing. With the position that the train was stopped, an empty flat car blocked the intersection. Approaching from the west was another Santa Fe train, traveling east on the south mainline. Although the south crossing gate was not working, the flashing red signals, warning bells and north gate were in operation. The night was clear and the road was dry.

At that point, Russell Benjamin attempted to cross the tracks, near or across the center line of the road. He struck the stationary train with enough force so as to wedge his van under the flat car. The engineer of the eastbound train saw the van stopped on the tracks and applied his emergency brake, but was unable to stop before strik-

ing the van. There is no evidence indicating which collision killed Mr. Benjamin.

Cheryl Benjamin, as administrator of the estate, filed a wrongful death action against the two defendants. She charged Santa Fe with negligence in the operation of its trains, failing to maintain the crossing, and failing to warn and protect motorists. She charged Perkins with negligence in the operation of his truck, failing to notify the railroad or any other agency of the broken crossing gate, and failing to warn motorists of the dangerous condition.

After extensive discovery, both defendants moved for summary judgment, arguing that a train stopped at a crossing is adequate notice of its presence and that there is no duty to provide additional warnings.

The trial court, relying on *Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 537 N.E.2d 738, granted Santa Fe's motion. The court further found that Perkins owed no duty to plaintiff's decedent and granted Perkins' motion. Plaintiff now appeals.

Plaintiff first argues that *Dunn* does not apply because there is another line of cases more on point.

In *Dunn*, the supreme court reaffirmed the so-called "standing-car" rule. This rule first appeared in *Gage v. Boston & Maine R.R. Co.* (1913), 77 N.H. 289, 90 A. 855, was first applied in Illinois in *Coleman v. Chicago, Burlington & Quincy R.R. Co.* (1936), 287 Ill. App. 483, 5 N.E.2d 103, and is still the law in most States. *Trevino v. Union Pacific R.R. Co.* (7th Cir. 1990), 916 F.2d 1230.

■ This doctrine provides that a train stopped at a crossing is held to be adequate notice and warning of its presence to any traveler who is in the exercise of ordinary care for his own safety, and the railroad is under no duty to provide additional signs, signals or warnings. *Dunn*, 127 Ill. 2d at 357, 537 N.E.2d at 741.

While acknowledging that rule, plaintiff contends that it applies only to situations where there was an absence of any warning device. She argues that there is another line of cases which deals with non-functioning signals, *i.e.*, where the railroad has already undertaken a duty to warn but negligently performed that duty. Plaintiff's argument is that the decedent, who was familiar with the crossing, relied on the absence of the gate as an affirmative indication that it was safe to proceed.

The two cases upon which plaintiff relies heavily are *Humbert v. Lowden* (1944), 385 Ill. 437, 53 N.E.2d 418, and *Langston v. Chicago & Northwestern Ry. Co.* (1947), 398 Ill. 248, 75 N.E.2d 263.

In *Humbert*, a car was struck by a moving train. The crossing was protected by a bell and gates, both of which were manually operated by a flagman. At the time of the accident, the gates had not been lowered. The only question before the supreme court was whether, as a matter of law, decedent was contributorily negligent. The court held that, under the facts, that was a question for the jury, which had decided in favor of plaintiff. The opinion states that when a railroad undertakes the duty of warning, a traveler has a right to presume that the gates will be operated properly.

In *Langston*, the tracks crossed Belvidere Road and ran parallel to Skokie Highway. The tracks crossed Belvidere about 75 feet from the intersection of Belvidere and Skokie. The lights controlling the intersection were synchronized with the crossing lights so that when a train was approaching, traffic on Belvidere had a red light at the intersection in addition to the flashing red signal at the crossing. On the night of the accident, the decedent's car was faced with a green light at the intersection and no flashing lights at the track. Due to a heavy fog, he could not yet see the train. Based on these indications, decedent crossed the tracks and was struck by a train. The issue before the court was whether the failure of the railroad crossing signals to indicate danger, while the device to the west of the crossing indicated safety, constituted negligence. The court held that the existence of the green light constituted an affirmative invitation to cross the tracks. Since the railroad had undertaken a duty to warn, it was negligent for not properly maintaining the signal.

These cases cannot properly be categorized as distinct from *Dunn*. *Humbert* and *Langston* are more accurately classified as falling into the special circumstances exception to the standing-train rule. Indeed, the *Dunn* court cited *Langston* as an example of special circumstances. *Dunn*, 127 Ill. 2d at 357, 537 N.E.2d at 741.

■ In both *Humbert* and *Langston*, the railroad had chosen a method of warning which then failed to operate. Here, Santa Fe chose several methods of warning, only one of which didn't work. At the time of the accident, the flashing lights and bells were in full operation. Viewing that fact in conjunction with the presence of the stopped train, it cannot be said that decedent was falsely induced into thinking it was safe to cross the tracks. "[I]t is erroneous to conclude *** that because additional warnings could have prevented the collision, the railroad had a duty to provide additional warnings." *Dunn*, 127 Ill. 2d at 365, 537 N.E.2d at 744.

Plaintiff argues that even if the standing-car rule applies, special circumstances existed. She cites the following facts as evidence of

special circumstances: (1) it was dark and the crossing was unlit; (2) the flat car was nonreflective and had a low profile so as to not constitute much of a visual impediment; (3) the decedent would have been able to see the lights from businesses across the track; (4) decedent would have been able to see the flashing signals on both sides of the track; (5) the gate was nonfunctional; and (6) another train was approaching which could have accounted for the activated flashing lights.

There is no fixed rule as to what constitutes special circumstances. (*Dunn*, 127 Ill. 2d at 357, 537 N.E.2d at 741.) Poor visibility and darkness alone do not constitute special circumstances. *Bachman v. Illinois Central R.R. Co.* (1971), 132 Ill. App. 2d 277, 268 N.E.2d 42.

In *Dunn*, plaintiff also argued that special circumstances existed, including darkness, the absence of lighting at the crossing, and unnecessary distractions in the vicinity of the crossing. (*Dunn*, 127 Ill. 2d at 359, 537 N.E.2d at 742.) Plaintiff there, as here, argued that perceptibility plays an important role, relying on *Petricek v. Elgin, Joliet & Eastern Ry. Co.* (1959), 21 Ill. App. 2d 60, 157 N.E.2d 421. However, as the *Dunn* court noted, *Petricek* specifically held that " 'one cannot recover for driving his automobile into a train standing across a crossing, except under extraordinary or unusual circumstances.' " *Dunn*, 127 Ill. 2d at 358, 537 N.E.2d at 741, quoting *Petrick*, 21 Ill. App. 2d at 66.

Two recent Federal appellate cases have also examined Illinois' standing-car rule in the wake of *Dunn*. *Pearman v. Norfolk & Western Ry. Co.* (7th Cir. 1991), 939 F.2d 521; *Trevino v. Union Pacific R.R. Co.* (7th Cir. 1990), 916 F.2d 1230.

First, in *Trevino*, the Seventh Circuit addressed the issue in a case in which an automobile struck a standing flat-car at an abandoned crossing. The track at that point had not been used for over a decade and was overgrown with weeds. To one side of the crossing, a fence had been built across the track. On the night of the accident, the railroad cars, which were normally stored on the track, had somehow crashed through the fence, coming to rest on the crossing. The crossing was not marked by a signal of any kind, not even a crossarms sign. The plaintiff claimed that this constituted special circumstances so as to avoid the traditional standing-car rule.

The trial court disagreed and granted defendant's motion to dismiss. After an extensive discussion of the standing-car rule, the court of appeals reversed. It noted that there had not yet been any pretrial discovery and decided that, under the Federal scheme of pleading, the

plaintiff had provided the defendant with adequate notice of the alleged special circumstances. The court determined that deciding the issue of special circumstances required going beyond the pleadings. Thus, the court of appeals reversed the dismissal so that discovery could proceed and the plaintiff could attempt to prove special circumstances.

A similar result was reached in *Pearman*. There, the plaintiff's decedent struck a black tanker car parked on a crossing. The trial court granted the railroad's motion to dismiss. In *Pearman*, as in *Trevino*, the court of appeals reversed and allowed discovery to proceed, so that the plaintiff would have the opportunity to demonstrate the existence of special circumstances.

Both of these cases are distinguishable from the instant case. *Pearman* and *Trevino* were decided on motions to dismiss where the trial judge was limited to looking at the facts alleged in the pleadings. Accordingly, the Seventh Circuit felt that the dismissals were premature and remanded to allow further discovery.

■ Here, both sides have engaged in extensive discovery. Expert witnesses have been retained and deposed. The conditions alleged by Benjamin do not rise to the level of special circumstances. The railroad was allowed to assume that drivers would exercise ordinary, reasonable care when approaching a crossing at which the flashing signals and bells were activated and at which a train was parked. *Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 458 N.E.2d 530 (defendant railroad's engineer "had the right to assume that motorists approaching the tracks would exercise due care for their own safety").

This does not mean that the decedent is barred recovery on the basis of the defunct doctrine of contributory negligence. The standing-car rule is not a rule of contributory negligence. There is no duty to warn of a standing car, and unless a duty is owed, there is no negligence. Hence, the plaintiff's negligence, slight or great, is irrelevant, as the issue is never reached. (*Dunn*, 127 Ill. 2d at 365, 537 N.E.2d at 744.) The trial court properly applied the standing-car rule in granting summary judgment for Santa Fe.

Plaintiff's next contention is that Perkins' motion should not have been granted because *Dunn* applies only to the railroad's duty. The trial court, although not specifically relying on *Dunn*, found that any duty Perkins had was to the railroad, not the decedent.

Perkins claims that the reasoning behind *Dunn* is equally applicable to him, namely "that the imposition of a general duty to anticipate and guard against the negligence of others would place an intolerable

burden on society." (*Dunn*, 127 Ill. 2d at 366, 537 N.E.2d at 745.) Thus, under his argument, no one—neither the railroad nor Perkins—had a duty to warn decedent about a stopped train.

The standing-car rule is analogous to the rule that excuses a potential injurer from having to warn of an obvious danger, both rules being instances of the larger principle that a person is entitled to assume that the people with whom he deals exercise reasonable care. (See, *e.g.*, *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223.) That principle has been understood to imply that if the accident is of the sort that reasonable care by potential victims would always avoid, the potential injurer has no duty of care. *Trevino*, 916 F.2d at 1236.

We need not address the issue of whether the rule in *Dunn* applies only to a railroad's duty to warn of a stopped train. Instead, we need only decide whether, under these facts, Perkins owed a duty to decedent.

In order to determine the existence of a duty, several considerations must be weighed. These include the reasonable foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.

■ Having already decided that the railroad had no duty to warn decedent about a stopped train, we cannot now place a greater duty on Perkins. In balancing the factors listed above, we feel that the trial court was correct in finding the absence of a duty on the part of Perkins.

The plaintiff's final contention is that the trial court erred in granting summary judgment on counts involving the moving train. Plaintiff alleged in her complaint that Santa Fe was negligent in failing to warn of the approaching train and in the operation of that train.

■ In the first part of her brief, plaintiff wants the court to infer that the decedent saw the signal lights, assumed they were for the approaching train and raced to beat that train, thus striking the parked train. Now plaintiff alleges that there was inadequate warning of the approaching train despite her claim that it was approximately 3,000 feet away when the engineer first saw the van on the tracks. The trial court was correct in finding that there was no genuine issue of material fact so as to preclude summary judgment on those counts.

For the foregoing reasons, the order of the Knox County circuit court granting summary judgment for both defendants is hereby affirmed.

Affirmed.

HAASE, J., concurs.

PRESIDING JUSTICE BARRY, dissenting:

In my opinion my colleagues embrace the standing-train rule as a rather inflexible doctrine and have lost sight of basic tort principles, as expressed by our supreme court in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 151, 554 N.E.2d 223, 231-32, that must be applied to determine the existence of a duty even in instances where the defendant's property seems to present an "open and obvious" risk. *Ward* makes it clear that the standing-train rule, like the "open and obvious" rule, is in essence a commonsense application of the tort principle that a defendant owes no duty to protect a plaintiff from "reasonable" risks. The danger posed by a train's boxcar, tanker or caboose standing on a railroad crossing may be a "reasonable" risk because no reasonable person under ordinary conditions would collide with it. Ergo, the railroad is said to owe no duty to protect a motorist claiming injury from such a collision. (*Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 537 N.E.2d 738.) Nevertheless, a duty may arise when conditions are altered, making the risk of collision "unreasonable." Quoting comment *f* to section 343A of the Restatement (Second) of Torts (1965), the *Ward* court stated:

> "[r]eason to expect harm to visitors from known or obvious dangers may arise 'where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. *** In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.'" *Ward*, 136 Ill. 2d at 149-50, quoting Restatement (Second) of Torts §343A, Comment *f*, at 220 (1965).

In *Ward*, plaintiff sued for injuries which he alleged were caused by K mart's failure to warn of the existence of a five-foot-tall concrete post located some 19 inches from the outside wall of the depart-

ment store near its entrance. Plaintiff was carrying a large mirror when he left the store, walked into the post and sustained head injuries. A jury found for the plaintiff and awarded him $85,000 in damages, reduced to $65,000 for his own negligence. The trial court subsequently granted defendant's motion for judgment *n.o.v.*, and the appellate court affirmed, finding no duty on the part of the store owner.

In reversing the lower courts' decisions, the supreme court emphasized that "since the existence of a duty turns in large part on public policy considerations, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden upon the defendant, as well as the likelihood of injury and the possible serious nature of such an injury must also be taken into account." *Ward*, 136 Ill. 2d at 151, 554 N.E.2d at 232.

The *Ward* court acknowledged its earlier opinion in *Dunn* and cited it for the point that in determining whether a defendant's premises present an unreasonable danger to invitees defendant need not anticipate the negligence of others. Contrary to the impression created by the majority here, the *Dunn* court did not hold that a railroad is automatically absolved of its general duty to exercise reasonable care for the protection of a motorist merely by parking its train on the tracks. Rather, the *Dunn* court recognized that even a standing train, under "special circumstances," could present an unreasonable risk to motorists. The "special circumstances" alleged in *Dunn* consisted of: (1) darkness; (2) presence of vehicular traffic at the crossing; and (3) various violations of Illinois Commerce Commission rules for railroad crossings. The *Dunn* court provided its analysis of plaintiff's allegations before concluding as a matter of law that such allegations, individually or combined, did not constitute "special circumstances." I do not believe that my colleagues have done so.

Obviously there is no magic list of "special circumstances," nor is there a magic number of them that must be established to survive a defendant's motion for summary judgment. In this case, in addition to those six facts recited by the majority, the special circumstances that have been developed thus far in the proceedings include: (7) the distance across the tracks was such as to accommodate five sets of tracks from the southernmost edge where the cross arm was missing to the signals at the northernmost edge; (8) the empty flatcar was located on the north mainline and plaintiff's decedent entered the crossing from the south; (9) plaintiff's decedent was driving a van which would place his straight line of vision above that of most car drivers; and (10) it can be assumed that the flashing lights and bells were in

continuous operation (at least on the north side) for at least 15 minutes immediately before the moving train entered the crossing.

According to the pleadings, affidavits and depositions of record, Kenneth Perkins, Sr., had entered the Linwood Road crossing from the north just as the warning signals were activated for an approaching train around 6:30 to 7 p.m. on December 13. He was operating a tractor-trailer rig with a 40-foot flatbed loaded with steel. Perkins was attempting to negotiate a left turn into a service road immediately south of the crossing when the southside cross arm began its descent. Perkins observed the arm strike the side of his trailer and break off. He did not report the incident.

Later, between 1:15 and 1:20 a.m., Russell Benjamin drove his van out of the tavern parking lot. The railroad crossing was only about one-half to three-quarters of a mile away. At 1:50 a.m. a train pulled to a stop on the north mainline. Sometime thereafter Russell drove his van into the side of a flatcar spanning the crossing. There were no witnesses to the collision between decedent's van and that train. At 2:05 a.m., the engineer of a train travelling from the west at 70 miles per hour on the south mainline saw decedent's van from a distance of about one-quarter of a mile. He could not brake in time to avoid hitting the van. The engineer of the stopped train observed that all warning signals on the north side were in place and operating when he crossed Linwood Road. The engineer of the moving train noted that all warning lights were operating on his approach.

Considering that decedent was familiar with the Linwood Road crossing, he knew that it was guarded by cross arms which descend gradually after the visual/audio signals are activated to warn of an approaching train. Yet, as decedent approached the crossing between 1:50 and 2:05 a.m. (the majority's assertion that Russell was driving home from the tavern about 2 a.m. is an imprecise assumption by my view of the record), the physical barrier was not in place and the train on the south mainline would have been somewhere between 17 miles and one-quarter of a mile away.

It bears repeating that, in ruling on a motion for summary judgment, the court must construe the pleadings, depositions and affidavits most strictly against the movant and most liberally in favor of the opponent and that the right to summary judgment must be clear beyond question. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 194, 380 N.E.2d 1040, 1044.) Given the proper standard and the facts as they appear of record, the following inferences support plaintiff's case: (1) the night was dark; (2) the empty flatcar presented a low and unlighted profile (particularly given the heightened line of vision of a

driver of a van); and (3) the unobstructed view of neon signs at the car dealership on the north side of the tracks could have given the impression that all of the tracks were still clear. With the scene thus set, the issue before this court is: Was the risk posed by the standing train so "reasonable" and the likelihood that a reasonable person exercising ordinary care would suffer an injury from a collision such as decedent's so unforeseeable as to bar recovery as a matter of law? I think not. In hindsight it seems clear that if the railroad had placed reflective devices or stripes on its flatcar, this death may have been prevented.

On the other hand, it seems equally obvious that plaintiff's decedent was not free from negligence. As the court in *Ward* so aptly put it, the duty plaintiff alleges

> "does not impose on defendant the impossible burden of rendering its premises injury-proof. \*\*\* We merely recognize that there may be certain conditions which, although they may be loosely characterized as 'known' or 'obvious' \*\*\*, may not in themselves satisfy defendant's duty of reasonable care. If the defendant may reasonably be expected to anticipate that even those \*\*\* in the general exercise of ordinary care will fail to avoid the risk because they are distracted or momentarily forgetful, then his duty may extend to the risk posed by the condition. Whether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact. The trier of fact may also consider whether the plaintiff['s decedent] was in fact guilty of negligence contributing in whole or in part to his injury, and adjust the verdict accordingly." *Ward*, 136 Ill. 2d at 156-57, 554 N.E.2d at 234.

Applying the public policy factor to the conditions here, it is debatable, in my opinion, whether a reasonable person would understand from the absence of the cross arm that he still had ample time to make the crossing before a train (that may not have been in sight) would reach it, despite the flashing lights and clanging bells on one or both sides of the crossing. According to decedent's friend who accompanied Russell to the tavern parking lot, Russell drove off between 1:15 and 1:20 that morning. The friend said he arrived home around 1:30 a.m. Decedent's whereabouts between 1:20 and 1:50 a.m. are not explained in the record. Also unexplained is decedent's conduct between 1:50 a.m., when the westbound train pulled to a stop, and 2:05 a.m., when decedent's van was first observed by the engineer of the

eastbound train. From the manner in which decedent's van was wedged under the flatcar, it can be assumed that decedent was traveling at some speed as he attempted to traverse the crossing approximately ½ hour after his friend got home. The evidence of some unspecified speed alone, however, does not justify an assumption that Russell did not in fact stop for several minutes in response to the warning signals before deciding to proceed across the tracks. Given the span of the five-track crossing, the reason Russell was driving at whatever speed he was just prior to impact is only subject to speculation. Nonetheless, the lack of any skid marks on the road supports plaintiff's theory that Russell did not in fact see any obstruction on the crossing before proceeding into it.

Suffice it to say, in my opinion, sufficient facts have been set forth so as to present a genuine issue of material fact as to whether the railroad owed a duty for the protection of plaintiff's deceased.

Further, I do not believe that the possibility of an injury was so unforeseeable as to relieve the truck driver defendant, Perkins, as a matter of law from owing a duty of reasonable care for the benefit of other motorists, including plaintiff's decedent. The statute requiring motorists to promptly report property damage they have caused (Ill. Rev. Stat. 1989, ch. 95½, par. 11—404) was enacted in part to protect subsequent motorists from the risk of collisions with obstructions lying on the road from the earlier accident. (See *McCormick v. Kruk* (1991), 220 Ill. App. 3d 449, 581 N.E.2d 73.) Again, in hindsight, it seems that if Perkins had reported the broken cross arm as required by law so that it could have been replaced promptly, a person familiar with the crossing traveling the road in the dead of night might not have been confused by its absence while an empty flatcar stood at the opposite side of the five-track crossing at a time when no eastbound train was in sight. As with the defendant railroad, I believe the question of whether Perkins owed a duty for the benefit of plaintiff's decedent under these circumstances should be addressed to the trier of fact and not decided as a matter of law.

I would reverse the trial court's judgment and remand this cause for trial.