GLENN M. TWENHAFEL *et al.*, Plaintiffs-Appellants, v. MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellee.

Fifth District   No. 5—91—0230

Opinion filed April 13, 1992.

Terry N. Brown, of Brown & Gavin, of Belleville, for appellants.

Thomas E. Jones and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

An automobile being driven by Mark Twenhafel collided with a Missouri Pacific freight train at a railroad crossing located in Gorham, Illinois. Twenhafel was severely injured. Mark Twenhafel and his parents filed a complaint against the defendant, Missouri Pacific Railroad Company, alleging that the following acts of negligence were the proximate cause of the collision:

"(a) Failed to provide warning of the presence of a train passing along the track, at a time reasonably sufficient for motorists approaching the grade crossing, at night, to stop prior to reaching the grade crossing;

(b) Failed to keep its right-of-way free from brush and trees that obstructed the presence of trains and their lights from the view of approaching motorists;

(c) Failed to construct and maintain the railroad right-of-way at grade, to Sandridge Township Road 281, so as to allow

motorists, traveling at night, to view a train at the instant grade crossing;

(d) Failed to adequately inspect the grade crossing to discover its lack of continued safety for approaching and crossing motorists; and

(e) Failed to install crossing signals, lighting, or any device to adequately warn motorists, traveling at night, of the approach and presence of trains."

The trial court granted the defendant's motion for summary judgment, and plaintiffs appeal. Plaintiffs argue that the trial court erred because there were special circumstances requiring the defendant to erect additional warnings or signs at the railroad crossing in question.

The purpose of a summary judgment proceeding is to determine whether there are any genuine issues of material fact. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) A motion for summary judgment may be granted when the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ill. Rev. Stat. 1989, ch. 110, par. 2—1005; *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 483 N.E.2d 210.

Summary judgment is both "an aid in the expeditious disposition of a lawsuit" and "a drastic means of disposing of litigation." (*Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) When considering the pleadings, depositions, admissions, exhibits and affidavits on file, a court "must construe them strictly against the movant and liberally in favor of the opponent" and enter a summary judgment "only when the right of the moving party is clear and free from doubt." *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.

An examination of the record reveals that the collision occurred on a rainy and foggy night at a grade crossing located on Sand Ridge Township Road 281 (Township Road), about one-half mile west of Illinois Route 3. The Township Road generally runs in an east and west direction at the grade crossing. The railroad track generally runs north and south at the crossing. At the time of the collision the crossing had a cross-buck warning sign, but it was without flashing lights. There was no advance railroad-crossing traffic-warning sign, nor were there any warning signs painted on the pavement. The crossing at Illinois Route 3 immediately north of the Township Road crossing was posted with flashing lights.

John Schoonover's deposition revealed that he was working as the brakeman in the caboose of the 52-car Missouri Pacific train.

Schoonover had traversed this crossing hundreds of times during his career. He testified that at several times during the year the area would be foggy. On the night of the incident at bar it was foggy, rainy, and dark in the area of the crossing.

John Wesley Lambert was the engineer, and he testified that several times a year it is foggy and it can be difficult to see in the area of the crossing. Lambert testified that on the evening in question the train's fireman sounded the train whistle as the train approached the crossing, just as he always did. Lambert testified that no extra precautions were taken when approaching crossings in foggy areas.

John Henry Moore was conductor that night, and he testified that he had traveled the same route that the train took that night thousands of times. Moore testified that the fog gets very thick at times in the area where the accident occurred. He did not find, however, that the fog is any thicker at that crossing than it would be in many other areas that he had traveled on this route. He testified that the engineer is not told to operate the train any differently when there is heavy fog or rain as opposed to when the weather is clear. Whether it is foggy or clear, the engineer "ring[s] the bell and blow[s] the whistle at all road crossings or any other time he deems necessary."

None of the train crew witnessed the collision. Other than Mark Twenhafel, the driver of the automobile, there were no surviving eyewitnesses to the accident. The Missouri Pacific train stopped about 16 miles from the Township Road crossing because the crew was informed that one or more of the train cars had a hot axle, wheel or bearing. Upon inspection the crew discovered that the ninth car from the end of the train had been damaged in the collision. Debris attached to the train car indicated that an automobile had struck the train.

■ A train, either moving or standing upon a railroad crossing, is generally held to be adequate notice and warning of its presence to any traveler who is in the exercise of ordinary care for his own safety, and the railroad is under no duty to give additional signs, signals, or warnings. (*Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 357, 537 N.E.2d 738, 741; *Petricek v. Elgin, Joliet & Eastern Ry. Co.* (1959), 21 Ill. App. 2d 60, 65, 157 N.E.2d 421, 423.) Illinois courts recognize that the exception to the general rule is that more warnings may be required if "special circumstances" are present. *Dunn*, 127 Ill. 2d at 357, 537 N.E.2d at 741.

Plaintiffs argue that this case presents special circumstances which cry out for it to be classified as an exception to the general proposition. Plaintiffs contend that the train crew members each testi-

fied that the area of the crossing frequently became very foggy. Plaintiffs argue that it is clear that the low visibility at the crossing prevented the crew from seeing the Twenhafel vehicle that night, and as such it is similarly clear that Twenhafel would have been prevented from seeing the train. There is no evidence that plaintiff stopped or slowed his vehicle upon approaching the crossing. Plaintiffs further argue that because flashing railroad-crossing lights were visible at another crossing located in the vicinity, flashing lights at the Township Road crossing would have alerted the plaintiff of the presence of the train.

■ While there is no fixed rule as to what constitutes "special circumstances," in applying an exception to the general rule that a train is adequate notice of its presence, perceptibility is an important element to consider. (*Petricek*, 21 Ill. App. 2d at 65, 157 N.E.2d at 423.) Circumstances which courts have recognized as "special" or "extraordinary" include a blinding snowstorm (*Petricek*, 21 Ill. App. 2d 60, 157 N.E.2d 421) and malfunctioning warning lights which indicated that the crossing was clear when in fact it was not (*Langston v. Chicago & North Western Ry. Co.* (1947), 398 Ill. 248, 75 N.E.2d 363). In *Petricek* the plaintiff was familiar with the railroad crossing, and as he approached it he stopped, rolled down his car window, and looked and listened. Notwithstanding such precautions, the snowstorm prevented the plaintiff from seeing the standing train. The evidence in *Langston* was that the night was foggy; lights could be seen for about 50 feet, and unlighted objects about 10 feet. The plaintiff was familiar with the crossing and the method in which the warning lights were operated at that place. When plaintiff's car reached the intersection the warning lights indicated that no train was approaching or was upon the crossing.

■ Neither the blinding snow storm of *Petricek* nor the invitation to cross of *Langston* is present in this case. Here, the evidence is that Twenhafel approached the crossing at night under circumstances of extremely poor visibility due to fog. We are aware that *Bachman v. Illinois Central R.R. Co.* (1971), 132 Ill. App. 2d 277, 268 N.E.2d 42, approved a directed verdict in a case involving a foggy crossing. In *Bachman*, however, there was evidence that the plaintiff approached the crossing at speeds of 45 to 50 miles per hour under foggy conditions. There is no evidence of such speed in this case. In addition, *Schott v. Atchison, Topeka & Santa Fe R.R.* (1968), 91 Ill. App. 2d 135, 234 N.E.2d 414, affirmed a plaintiff's verdict even though the plaintiff ran into the defendant's train when there was no foggy condition present.

112

Having examined the record, we conclude that the pleadings, deposition, and affidavits on file show that there is a genuine issue of material fact as to whether special circumstances exist. We find that the trial court erred in granting summary judgment. We reverse the judgment of the circuit court and remand for further proceedings.

Reversed and remanded.

WELCH and LEWIS, JJ., concur.